1    CHRISTOPHER M. YOUNG (Bar No. 163319)
     RYAN T. HANSEN (Bar No. 234329)
2    AMANDA C. FITZSIMMONS (Bar No. 258888)
     DLA PIPER LLP (US)
3    401 B Street, Suite 1700
     San Diego, CA  92101-4297
4    Tel:  619.699.2700
     Fax:  619.699.2701
5
     Attorneys for Defendant
6    OLYMPUS IMAGING AMERICA INC.

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                       SACRAMENTO DIVISION

11

12   STEFANIE MLEJNECKY                CASE NO. 2:10-cv-02630-JAM-KJN

            Plaintiff,                 **JOINT STATEMENT REGARDING**
13                                     **MOTION OF DEFENDANT OLYMPUS**
                                       **IMAGING AMERICA INC. FOR**
14       v.                            **PROTECTIVE ORDER STAYING**
                                       **DISCLOSURES AND DISCOVERY**
15   OLYMPUS IMAGING AMERICA INC.,
                                       Date:        February 3, 2011
16          Defendant.                 Time:        10:00 a.m.
                                       Courtroom: 25
17                                     Judge:       Hon. Kendall J. Newman

18                                     **ORAL ARGUMENT REQUESTED**

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE ACTION.................................................................................... 1

II.   SUMMARY OF DISCOVERY DISPUTE........................................................... 1

III.  SUMMARY OF PERTINENT FACTS AND MEET AND CONFER EFFORTS............ 1

IV.   PARTIES' CONTENTIONS REGARDING THE CONTESTED ISSUE ....................... 2

    A.    Olympus's Contentions and Points and Authorities .............................. 2

        1.    The Standard and Policy Behind Staying Discovery ................................ 3

        2.    Olympus's Pending Dispositive Motion Justifies a Stay .......................... 4

            a.    Plaintiff Lacks Standing................................................. 5

            b.    Plaintiff Cannot Plead Her Claims.................................. 6

            c.    Olympus Should Not Be Burdened With Plaintiff's Discovery Prior to a Ruling on the Motion to Dismiss.................. 7

        3.    Plaintiff's Attempts to Argue Around a Stay Fall Short ........................... 8

            a.    Plaintiff Relies on an Incorrect Standard ...................... 9

            b.    Plaintiff Misses the Point on Standing......................... 10

            c.    Plaintiff's Fraud Argument Illustrates the Defects in Her Claim................................................................ 11

            d.    Plaintiff Relies on Issues That are Irrelevant to This Motion ....... 12

            e.    Plaintiff's Argument That Discovery is Relevant to Olympus's Motion is Without Merit............................. 12

            f.    Plaintiff's Request for Fees and Costs is Baseless....................... 13

        4.    Olympus's Conclusion ................................................................. 13

    B.    Plaintiff's Contentions and Points and Authorities ............................... 13

        1.    The Discovery Rules Mandate that Defendant Respond to Plaintiff's Discovery Requests and Submit Initial Disclosures ............... 14

        2.    Defendant Lacks Good Cause for a Complete Stay of All Discovery...... 14

            a.    Defendant is unable to satisfy the strict good cause standard....... 14

            b.    Defendant cannot show by clear and convincing evidence that it will prevail on the merits of its Motion to Dismiss. .......... 16

                 (1)    The existence of a limited warranty does not preclude Plaintiff's claims.................................. 16

                (2)    Plaintiff Stefanie Mlejnecky has standing to bring her claims under the CLRA and UCL.............................. 18

                 (3)    Plaintiff adequately stated her fraud-based claims with specificity. ................................................ 20

                 (4)    Plaintiff pled sufficient facts to support her "unfair business practices" claim ................................. 21

# TABLE OF CONTENTS
(continued)

**Page**

c.     Because Defendant cannot show by clear and convincing evidence that it will prevail on its motion to dismiss, Its Motion for a Protective Order Staying Discovery must be denied. ........................................................................................ 22

d.     Because the limited discovery plaintiff sought is relevant to the Motion to Dismiss, there are additional grounds to deny Defendant's Motion for a Protective Order Staying Discovery. ...................................................................................... 23

3.     Plaintiff is Entitled to Her Fees and Costs for Responding to Defendant's Motion for a Protective Order ............................... 24

4.     Plaintiff's Reply to Defendant Olympus's Contentions and Points and Authorities ........................................................................... 25

a.     Defendant Misconstrues the Standard for a Motion Seeking a Discovery Stay. ......................................................... 25

b.     Defendant's Argument That Its Motion to Dismiss Justifies a Stay Misinterprets the Relevant Case Law and Rule 9(b).......... 28

(1)     Defendant's standing arguments misinterpret the relevant case law ...................................................... 28

(2)     Defendant's arguments regarding Federal Rule of Civil Procedure 9(b) lack merit........................................ 29

c.     The Alleged Burden on Defendant Is Not Only Overstated, But Also Irrelevant to the Standard for Deciding Whether to Stay Discovery. .......................................................... 30

5.     Plaintiff's Conclusion ............................................................ 31

DLA PIPER LLP (US)
SAN DIEGO

WEST\223019951.1

JOINT STATEMENT RE: MOTION TO STAY DISCOVERY AND DISCLOSURES
(2:10-CV-02630-JAM-KJN)

# TABLE OF AUTHORITIES

Page

CASES

*Ameritel Inns v. Moffat Bros. Plastering, L.C.*,
No. CV 06-359-S-EJL, 2007 WL 1792323 (D. Idaho June 20, 2007) .................................. 10

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) .......................................................................................................... 4, 27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 4, 27

*Biliske v. American Live Stock Ins. Co.*,
73 F.R.D. 124 (W.D. Okla. 1977) ........................................................................................... 30

*Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ..................................................................................................... 18

*Californians for Disability Rights v. Mervyn's, LLC*,
39 Cal. 4th 223 (2006) ............................................................................................................... 5

*Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163, 186-87 (1999) ............................................................................................... 21

*City of Seattle v. Prof'l Basketball Club, LLC*,
No. C07-1620MJP, 2008 WL 539809 (W.D. Wash. Feb. 25, 2008) ................................. 30, 31

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ................................................................................................... 5

*Daugherty v. Am. Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2007) ........................................................................................... passim

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682 (2010) ........................................................... 19

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990) ............................................................................................... 26

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
192 F.R.D. 284 (S.D. Cal. 2000) ......................................................................................... 9, 10

*Hewlett-Packard v. Superior Court*,
167 Cal. App. 4th 87, 83 Cal. Rptr. 3d 836 (2008) ................................................................. 18

*Hoey v. Sony Electronics*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) ............................................................................. 7, 12

-iii-

# TABLE OF AUTHORITIES
(continued)

Page

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
    Nos. 08-CV-2276-IEG (WVG), 09-CV-0620-IEG (WVG), 09-CV-0736-IEG (WVG),
    09-CV-2703-IEG (WVG), 2010 WL 4892114 (S.D. Cal. Nov. 30, 2010)...................... passim

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ........................................................................................... 19

*In re Valence Tech. Sec. Litig.*,
    No. C 94-1542-SC, 1994 WL 758688 (N.D. Cal. Nov. 18, 1994)........................... 14

*Jarvis v. Regan*,
    833 F.2d 149 (9th Cir. 1987)...................................................... 3, 4, 26, 27

*Johnson v. New York Univ. School of Education.*,
    205 F.R.D. 433 (S.D.N.Y. 2002) ............................................................ 10

*Kiblen v. Retail Credit Co.*,
    76 F.R.D. 402 (E.D. Wa. 1977) ............................................................ 15

*Kohler v. Chelsea San Diego Finance, LLC*,
    No. 09cv2780-JAH (BLM) 2010 WL 4929073 (S.D. Cal., Nov. 30, 2010)........................... 3

*Lima v. Gateway, Inc.*,
    710 F. Supp. 2d 1000 (C.D. Cal. 2010) ........................................................ passim

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988).................................................... 3, 26

*Long v. Hewlett-Packard Co.*,
    No. C 06-02816, 2007 WL 2994812 (N.D. Cal. July 27, 2007) ........................... 12

*Lozano v. AT&T Wireless, Services, Inc.*,
    504 F.3d 718 (9th Cir. 2007)........................................................ 21, 22

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ............................................................ 5

*Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp.*,
    661 F.2d 776 (9th Cir. 1981)...................................................... 20

*Morgan v. Harmonix Music Systems, Inc.*,
    No. C08-5211 BZ, 2009 WL 2031765 (N.D. Cal. July 30, 2009)........................... 12

*Ostreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................ 6, 17, 28, 29

DLA PIPER LLP (US)
SAN DIEGO

## TABLE OF AUTHORITIES
(continued)

Page

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA,*
  220 F.R.D. 349 (N.D. Cal. 2003) ............................................................... 4, 25, 26, 27

*Qwest Communications Corp. v. Herakles, LLC,*
  No. 2:07-cv-00393-MCE-KJM, 2007 WL 2288299 (E.D. Cal. Aug. 8, 2007) ...................... 9

*Rae v. Union Bank,*
  725 F.2d 478 (9th Cir. 1984) ..................................................................... 3, 4, 26, 27

*Roesberg v. Johns-Manville Corp.,*
  85 F.R.D. 292 (E.D. Pa. 1980) ..................................................................... 30, 31

*Rutman Wine Co. v. E. & J. Gallo Winery,*
  829 F.2d 729 (9th Cir. 1987) ....................................................................... 3, 4, 26, 27

*Seven Springs Ltd P'ship v. Fox Capital Mgmt. Corp.,*
  No. S-07-0142 LKK GGH, 2007 WL 1146607 (E.D. Cal. April 19, 2007) ................... passim

*Solomon Realty Co. v. Tim Donut, U.S. Ltd.,*
  No. 2:08-cv-561, 2009 WL 2485992 (S.D. Ohio Aug. 11, 2009) ................................... 26, 27

*Super Film, Inc. v. UCB Films, Inc.,*
  219 F.R.D. 649 (D. Kan. 2004) ..................................................................... 30, 31

*Tamburo v. Dworkin,*
  No. 04 C 3317, 2010 WL 4867346 (N.D. Ill. Nov. 17, 2010) ........................................ 27

*Twin City Fire Ins. Co. v. Employers Ins. of Wausau,*
  124 F.R.D. 652 (D. Nev. 1989) ................................................................... 14, 15, 26

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ....................................................................... 20

*Wood v. McEwen,*
  644 F.2d 797 (9th Cir. 1981) ....................................................................... 9, 10, 15

**STATUTES**

Cal. Bus. & Prof. Code § 17204 ....................................................................... 5

Cal. Bus. & Prof. Code § 17500 ....................................................................... 22

Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(7) ....................................................... 22

# TABLE OF AUTHORITIES
(continued)

**Page**

Cal. Civ. Code § 1780 (a) ............................................................................................................. 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ...................................................................................................................... 7

Fed. R. Civ. P. 9(b) ............................................................................................................... passim

Fed. R. Civ. P. 12(b) ......................................................................................................... 3, 4, 26

Fed. R. Civ. P. 23 ....................................................................................................................... 18

Fed. R. Civ. P. 26 ......................................................................................................... 2, 3, 14, 24

Fed. R. Civ. P. 37(a)(5) .............................................................................................................. 24

Local Rule 251 .............................................................................................................................. 1

DLA PIPER LLP (US)
SAN DIEGO

WEST\223019951.1

JOINT STATEMENT RE: MOTION TO STAY DISCOVERY AND DISCLOSURES
(2:10-CV-02630-JAM-KJN)

1    Pursuant to Local Rule 251, Defendant Olympus Imaging America Inc. ("Olympus" or

2    "Defendant") and Plaintiff Stefanie Mlejnecky ("Plaintiff") respectfully submit the following

3    Joint Statement in regard to Olympus's motion for a protective order staying discovery and

4    disclosures until a ruling is made on its pending motion to dismiss.

5    **I.      NATURE OF THE ACTION**

6    Plaintiff, on behalf of herself and all other similarly situated California residents, contends

7    that Olympus made and continues to make material misrepresentations and omissions regarding

8    the alleged waterproof and shockproof qualities of Olympus Stylus SW cameras.  Plaintiff

9    contends that these representations are untrue, and that Plaintiff and class members relied upon

10   these representations.  Plaintiff contends that the Stylus SW cameras contain common defects,

11   including common defects relating to the card cover and card cover latch, which cause the

12   cameras to fail or malfunction when underwater or when dropped, despite Olympus's material

13   representations that the cameras are waterproof and shockproof.  Plaintiff has brought suit against

14   Olympus under California's Consumers Legal Remedies Act ("CLRA") and Unfair Competition

15   Law ("UCL").

16   Olympus vigorously denies Plaintiff's allegations, including those set forth above.

17   Olympus has responded to Plaintiff's First Amended Complaint by filing a motion to dismiss.

18   Olympus contends that Plaintiff suffered no injury from her post-warranty claims and lacks

19   standing to bring this action.  Olympus also contends that Plaintiff has not, and cannot, plead

20   sufficient facts to state a claim for relief.

21   **II.     SUMMARY OF DISCOVERY DISPUTE**

22   Defendant moves to stay discovery and disclosures pending this Court's ruling on its

23   motion to dismiss, which is scheduled to be heard on February 23, 2011.  Plaintiff opposes

24   Defendant's request for a complete discovery stay.  Thus, the Parties dispute whether discovery

25   and disclosures should proceed at this time.

26   **III.    SUMMARY OF PERTINENT FACTS AND MEET AND CONFER EFFORTS**

27   On September 28, 2010, Plaintiff filed her original Complaint against Olympus, alleging

28   violations of the CLRA and UCL based on Olympus's affirmative misrepresentations regarding

-1-

the "shockproof" and "waterproof" qualities of its Stylus SW cameras, upon which Plaintiff allegedly relied in purchasing her Stylus SW camera. On November 3, 2010, Olympus responded with a motion to dismiss, asking the Court to dismiss Plaintiff's Complaint with prejudice due to lack of standing and failure to plead facts sufficient to state a claim for relief. On November 24, 2010, Plaintiff filed the now-operative First Amended Complaint.

On December 6, 2010, counsel for Plaintiff and Olympus met and conferred regarding discovery and disclosures pursuant to Federal Rule of Civil Procedure 26(f). Olympus's counsel informed Plaintiff's counsel that Olympus would be filing a dispositive motion to dismiss on the many of the same grounds as its previous motion and requested a stay of initial disclosures and discovery until the motion to dismiss could be determined. The parties were unable to reach a stipulation staying disclosures and discovery until the motion could be heard. The next day, Plaintiff served Olympus with written discovery consisting of interrogatories and requests for production of documents (a copy of which is attached hereto as Exhibit A).

On December 8, 2010, Olympus filed its pending motion to dismiss the First Amended Complaint with prejudice. Between December 9, 2010 and December 13, 2010, counsel for both parties exchanged correspondence attempting to resolve their differences with regard to a stay of discovery and disclosures, copies of which are attached as Exhibit B. On December 13, 2010, the parties filed a Joint Status Report and Discovery Plan with this Court, noting their differing opinions as to when discovery should commence and including Olympus's objection to initial disclosures taking place at this time. Because the parties were unable to resolve the dispute, this motion followed.

## IV.   PARTIES' CONTENTIONS REGARDING THE CONTESTED ISSUE

### A.   Olympus's Contentions and Points and Authorities

The brief stay of discovery and disclosures being sought will not prejudice Plaintiff at all, and is clearly the most efficient manner in which to proceed; by contrast, permitting discovery to go forward at this time will work a severe prejudice on Olympus. Plaintiff has filed a fraud-based complaint against Olympus for which she neither has standing nor the ability to plead sufficient supporting facts. Plaintiff cannot plead around her lack of standing or insufficient facts, and thus

-2-

1  Olympus has promptly moved to dismiss this action with prejudice -- yet Plaintiff seeks initial

2  disclosures and discovery responses *before* Olympus' motion can be heard (in less than three

3  weeks).

4      Thus, this case presents precisely the circumstances in which controlling authorities have

5  noted that stays of discovery are warranted, particularly where (as here) Plaintiff will in no way

6  be prejudiced from the short stay requested.  Olympus should be spared the substantial expense of

7  engaging in disclosures and discovery in a case that is expected to be dismissed with prejudice

8  once its dispositive motion to dismiss can be heard.

9          **1.      The Standard and Policy Behind Staying Discovery**

10     Courts are vested with broad discretion to control discovery, and may stay discovery

11  where "the burden or expense of the proposed discovery outweighs its likely benefit."  *Little v.*

12  *City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); Fed. R. Civ.P. 26(b)(2)(C).  Recognizing the

13  burden, expense, and inefficiency created by discovery where a dispositive motion is pending,

14  courts have regularly found that a stay of discovery is warranted when a potentially dispositive

15  motion is on file.  *Little*, 863 F.2d at 685 (upholding district court's stay of discovery pending

16  potentially dispositive motion); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (affirming

17  district court's stay of discovery pending dispositive motion to dismiss); *Rae v. Union Bank*, 725

18  F.2d 478, 481 (9th Cir. 1984) (same); *see also*, *Kohler v. Chelsea San Diego Finance, LLC*,  No.

19  09cv2780-JAH (BLM) 2010 WL 4929073, *2 (S.D. Cal., Nov. 30, 2010) (recognizing that courts

20  may stay discovery pending resolution of a potentially case-dispositive motion).

21     As the Ninth Circuit court explained in *Little*, a stay of discovery pending the resolution of

22  a dispositive motion "furthers the goal of efficiency for the court and the litigants."  *Id*.; *see also*,

23  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  In *Rutman*, the

24  Ninth Circuit court further noted that "[t]he purpose of F.R.Civ.P 12(b)(6) is to enable defendants

25  to challenge the sufficiency of complaints without subjecting themselves to discovery."  *Rutman*

26  *Wine Co.*, 829 F.2d at 738 (affirming denial of discovery to plaintiff prior to dismissing complaint

27  with prejudice).  The *Rutman* court admonished that "[i]t is sounder practice to determine whether

28  there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to

1   undergo the expense of discovery." *Id*.  The Ninth Circuit court has also explained that when a

2   12(b) motion is on file, "[d]iscovery is only appropriate where there are factual issues raised by a

3   Rule 12(b) motion" that must be addressed to rule on the motion.  *Jarvis*, 833 F.2d at 155; *see*

4   *also*, *Rae*, 725 F.2d at 481.  Accordingly, some district courts in the Ninth Circuit have applied a

5   two-prong test to determine whether a protective order will issue in such circumstances:

6   (1) whether there is a pending dispositive motion; and (2) whether the motion can be decided

7   absent additional discovery.  *See, e.g., Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburg,*

8   *PA*, 220 F.R.D. 349, 351-52 (N.D. Cal. 2003).

9          The United States Supreme Court has also recently addressed the issue of discovery prior

10   to the determination of a dispositive pleading motion.  In clarifying federal pleading standards in

11   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007), the United States Supreme Court

12   discussed the burden and expense that defendants may endure prior to a successful pleading

13   challenge.  The *Twombly* court explained that "when the allegations in a complaint, however true,

14   could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the

15   point of minimum expenditure of time and money by the parties and the court.'" *Id.*; *see also*,

16   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (explaining that a complaint that does not state a

17   valid claim "does not unlock the doors of discovery for a plaintiff").

18                    **2.      Olympus's Pending Dispositive Motion Justifies a Stay**

19          A protective order is warranted here because Olympus' pending motion to dismiss is

20   dispositive on multiple grounds and, if granted, will obviate the need for any discovery.  As more

21   fully briefed in the motion to dismiss, Olympus seeks dismissal of Plaintiff's operative complaint,

22   in its entirety, on the independent grounds that (1) Plaintiff lacks standing due to her lack of

23   injury, and (2) Plaintiff has not, and cannot, plead facts to state a claim under any of her causes of

24   action.[1]  A brief summary of the dispositive grounds underlying Olympus' motion to dismiss is

25   provided below:

26   /////

27   ─────────────────────

[1] Olympus's motion to dismiss is also supported by two additional and alternative grounds for
dismissing portions of Plaintiff's claims that, unlike the two grounds identified above, are not

28   dispositive of the entire action.

### a.     Plaintiff Lacks Standing

Olympus seeks dismissal of the operative First Amended Complaint ("FAC") on the grounds that Plaintiff's CLRA and UCL claims are based on statutory schemes which contain specific standing provisions requiring plaintiffs to have suffered injury in fact as a result of the challenged conduct.  Cal. Bus. & Prof. Code § 17204; *see also Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006); Cal. Civ. Code § 1780 (a); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641-46 (2009).  Plaintiff's own allegations leave no doubt that Plaintiff purchased a camera with a one-year warranty, that Plaintiff was aware of the warranty upon making her purchase, that Plaintiff experienced no problems with her camera for the entire term of the warranty, and that Plaintiff's purported injury arises from Olympus's refusal to provide free post-warranty repairs to Plaintiff's camera after she dropped it more than two years after her purchase and more than one year after her warranty expired.  (*See* FAC ¶¶ 8-11, 32.)  As courts have routinely held, "the only expectation buyers could have had about the [product] was that it would function properly for the length of [the] express warranty"  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2007); *see also In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, Nos. 08-CV-2276-IEG (WVG), 09-CV-0620-IEG (WVG), 09-CV-0736-IEG (WVG), 09-CV-2703-IEG (WVG), 2010 WL 4892114, *5 (S.D. Cal. Nov. 30, 2010) ("Where a manufacturer has expressly warranted a product, consumers can only expect that product to function properly for the length of the manufacturer's express warranty.").  By Plaintiff's pleadings, it is clear that she received the full benefit of her bargain, and suffered no injury by Olympus's refusal to provide complimentary repairs after her warranty expired.  Plaintiff thus lacks standing to assert her claims.  *See Daugherty, Inc.*, 144 Cal. App. 4th at 836-39; *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026-27 (9th Cir. 2008).

Indeed, such "post-warranty" claims of injury are falsely premised on a 'perpetual warranty' that does not exist and that (as the *Daugherty* court explained) if recognized would "change the landscape of warranty and product liability law in California.  Failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited

1    warranties, and product defect litigation would become as widespread as manufacturing itself."

2    *Daugherty*, 144 Cal. App. 4th at 829; *see also*, *Ostreicher v. Alienware Corp.*, 544 F. Supp. 2d

3    964, 972 (N.D. Cal. 2008) (noting that allowing post-warranty claims "would eliminate term

4    limits on warranties, effectively making them perpetual or at least for the 'useful life' of the

5    product. . . . [even though] the purpose of a warranty is to contractually mark the point in time

6    during the useful life of a product when the risk of paying for repairs shifts from the manufacturer

7    to the consumer.").

8                          **b.     Plaintiff Cannot Plead Her Claims**

9            Olympus also moved to dismiss Plaintiff's FAC on the ground that she has failed to

10   sufficiently plead her claims, which are grounded in fraud and subject to Federal Rule of Civil

11   Procedure 9(b).  Here, Olympus argues that Plaintiff's inability to cure these pleading

12   deficiencies, despite already having had an opportunity to amend her complaint, itself

13   demonstrates that these errors are fatal and justify dismissal with prejudice.

14           Although Plaintiff has grounded her claims on purported misrepresentations and

15   omissions by Olympus, Plaintiff is unable to plead facts sufficient to show that any statements

16   made by Olympus were false or that Olympus had a duty to make additional disclosures.  Courts

17   have repeatedly held that representations consistent with warranties, which are not alleged to have

18   been breached with respect to plaintiffs, cannot constitute misrepresentations upon which a

19   CLRA or UCL claim may be based.  *See, e.g.*, *Daugherty*, 144 Cal. App. 4th at 836-37; *In re*

20   *Sony*, 2010 WL 4892114, at *5.  Here, the statements challenged by Plaintiff simply reiterate the

21   terms of the express warranty, which warrants the camera's ability to operate in water at depths of

22   up to 10 meters and sustain accidental impact for one year.  Plaintiff makes no allegations that the

23   warranty was breached, and thus fails to allege that any such statements are false.  Nor can

24   Plaintiff allege that the warranty was breached, because she admittedly experienced no problems

25   with her camera during the entire term of her warranty, nor did she have any warranty work

26   rejected.  Not only is there an absence of allegations of falsity in general, but Plaintiff fails to

27   specify even how the statements were false at the time they were made.

28   /////

1        Similarly, Plaintiff has failed to allege concealment or a failure of a duty to disclose to

2 support her CLRA and UCL claims.  Absent representations regarding the lifespan of the part in

3 question, a duty to disclose arises only where the defect poses a risk to the safety of the consumer

4 or the general public.  If the defect poses no danger to the safety of others, manufacturers have no

5 duty to disclose a defect that may occur at any point during the life of a product.  *Daugherty*, 144

6 Cal. App. 4th at 838; *Hoey v. Sony Electronics*, 515 F. Supp. 2d 1099, 1101 (N.D. Cal. 2007).

7 Plaintiff makes no allegations that Olympus warranted the part in question or the cameras for a

8 period longer than one year from purchase or that the alleged defect raises any safety concerns.

9 Thus, no duty to disclose any post-warranty defects has been alleged.  As the *Hoey* court

10 explained, "[t]here is no authority that provides that the mere sale of a consumer electronics

11 product in California can create a duty to disclose any defect that may occur during the useful life

12 of the product."  *Hoey*, 515 F. Supp. 2d at 1104-05.

13        Moreover, Plaintiff Mlejnecky has not alleged (and cannot allege) facts showing that

14 Olympus knew any statements were false when made or that it knowingly concealed information.

15 As in *In re Sony*, Plaintiff merely relies on conclusions that Olympus knew of a purported defect

16 (which never manifested itself in Plaintiff's camera during the warranty period or during the

17 following year).  *In re Sony*, 2010 WL 4892114, at *5. (*See e.g.*, FAC ¶¶ 51, 68.)  Such

18 conclusory allegations are insufficient under Rule 9(b), or even Rule 8(a).  The highly analogous

19 *In re Sony* case demonstrates that dismissal with prejudice is appropriate where a plaintiff is

20 unable to cure these deficiencies by prior amendment.

21        **c.**      **Olympus Should Not Be Burdened With Plaintiff's Discovery**

22                      **Prior to a Ruling on the Motion to Dismiss**

23        The reasoning of the United States Supreme Court and the Ninth Circuit Court of Appeals

24 set forth above in temporarily staying discovery pending a dispositive motions is precisely on

25 point here.  Simply put, it does not make sense to unlock the doors to discovery and subject

26 Olympus to the accompanying burden and expense where the case may very well "go away" in

27 less than three weeks when Olympus's dispositive motion is heard.  This is particularly true

28 where the brief stay requested has no prejudicial impact whatsoever on Plaintiff Mlejnecky.

-7-

1    The prejudice to Olympus should discovery be permitted to go forward at this point would

2    be substantial.  Plaintiff Mlejnecky has already served Olympus with seventeen interrogatories

3    requesting a broad range of information regarding such topics as the manufacturing, sale,

4    researching, marketing, distributing, testing, regulatory compliance, quality control, warranty

5    processing, complaints, and litigation in any way involving the cameras identified in the

6    complaint.  (*See* Ex. A p. 9-15.)  The breadth of Plaintiff's pending requests is illustrated by

7    Interrogatory No. 13, which asks Olympus to "IDENTIFY EACH and EVERY meeting YOU had

8    whose subject matter in any manner RELATED TO the AFFECTED CAMERAS."  (Ex. A

9    p. 13.)  Plaintiff also requests confidential and proprietary information, including information

10   regarding testing, analysis, manufacture, and sales.  (*See* Ex. A p. 9-15; Declaration of Michael R.

11   Smith in Support of Motion of Defendant Olympus Imaging America Inc. For Protective Order

12   Staying Disclosures and Discovery ("Smith Decl.") ¶ 3.)

13   Plaintiff has also served thirty-six document requests which are similarly burdensome,

14   requesting documents, communications, and electronically stored information relating to the

15   broad categories mentioned above, as well as documents relating to owners of the cameras,

16   procedures and policies, and training materials.  (*See* Ex. A p. 3-9, 15-28.)  Responding to such

17   discovery would require considerable time and expense, including but not limited to potential law

18   and motion practice addressing deficiencies in the scope of the requests, many of which are

19   overbroad.  (Smith Decl. ¶ 4.)  Providing initial disclosures at this point would, of course, require

20   additional time and expense on Olympus' part – and likely to no end.

21   By contrast, Plaintiff cannot point to *any prejudice* that would result from a brief stay of

22   discovery and initial disclosures pending Olympus's dispositive motion to dismiss.  Notably, the

23   motion to dismiss is scheduled to be heard less than three weeks after this motion is heard.

24   Olympus respectfully requests the Court grant a protective order staying discovery and initial

25   disclosures, pending a ruling on Olympus' pending motion to dismiss.

26   **3.      Plaintiff's Attempts to Argue Around a Stay Fall Short**

27   Perhaps the most glaring deficiency in Plaintiff's contentions and memorandum of law

28   provided below in opposition to Olympus' request, is her complete failure to identify any

1    prejudice that would result from the brief stay requested.  There is simply no counterbalance to

2    the expense and harm that would be suffered by Olympus if discovery was not stayed prior to a

3    determination of its soon-to-be-heard dispositive motion.

4         Plaintiff's contentions in opposition also fall short in several other respects, briefly

5    addressed below.

6                    a.    **Plaintiff Relies on an Incorrect Standard**

7         Plaintiff advances the proposition that the Court must determine by clear and convincing

8    evidence or a certainty that Olympus will prevail on its motion to dismiss in order for a protective

9    order to issue, relying primarily on language from *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir.

10   1981) and an unpublished case, *Seven Springs Ltd P'ship v. Fox Capital Mgmt. Corp.*, No. S-07-

11   0142 LKK GGH, 2007 WL 1146607, at *1 (E.D. Cal. April 19, 2007).  However, as district

12   courts in California have recognized, no such rule has ever been provided by the Ninth Circuit.

13   *See e.g.*, *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 287, n.3 (S.D. Cal. 2000); *Qwest*

14   *Communications Corp. v. Herakles, LLC*, No. 2:07-cv-00393-MCE-KJM, 2007 WL 2288299, *3

15   (E.D. Cal. Aug. 8, 2007).  The language from *Wood* that a court "may continue to stay discovery

16   when it is convinced that the plaintiff will be unable to state a claim for relief" is not a summary

17   of the standard and is best interpreted by the court's analysis that followed – from which there is

18   no indication of a "clear and convincing" standard.  *Wood*, 644 F.2d at 801.  Rather, the *Wood*

19   court found that the district court did not abuse its discretion in staying discovery where "there

20   was a real question whether [Plaintiff's] claim presented a substantive basis for vacating the

21   judgment; at no time has [Plaintiff] alleged that any prejudice resulted from the order." *Id.* at

22   802.

23        As the *GTE Wireless* court explained, the language upon which such a test is based is

24   whether there is a "clear possibility" that the dispositive motion will be granted, not language

25   requiring a probability or absolute surety of success.  *GTE Wireless, Inc.*, 192 F.R.D. at 287

26   (emphasis added).  Accordingly, the district court in *GTE Wireless, Inc.* found that the magistrate

27   court abused its discretion in denying a motion for a protective order to stay discovery based on a

28   finding that it was not certain or "immediately evident" that the pending dispositive motion would

-9-

1  be granted.  *Id.*; *see also*, *Johnson v. New York Univ. School of Education.*, 205 F.R.D. 433, 434

2  (S.D.N.Y. 2002) (noting that courts have held that a stay of discovery is appropriate pending a

3  dispositive motion to dismiss where the motion "appears to have substantial grounds" or "does

4  not appear without foundation in law"); *Ameritel Inns v. Moffat Bros. Plastering, L.C.*, No. CV

5  06-359-S-EJL, 2007 WL 1792323, *4 (D. Idaho June 20, 2007) (granting stay of discovery

6  pending dispositive motion where the motion "does not appear to be without some degree of

7  foundation in law and there is a possibility that Defendant may prevail").

8         Olympus believes that it is highly likely that its motion to dismiss will be granted and,

9  thus, the distinction in the proper analysis discussed above likely makes no difference.  However,

10  should the Court opine that the likelihood of Olympus's motion to dismiss being granted is less

11  than "certain," or less than "probable," Olympus's motion for protective order is still proper

12  where there are valid grounds for the motion and a possibility exists that it will be granted.  Here,

13  in the words of the court in *Wood*, there is a real question as to whether Plaintiff has standing to

14  bring this lawsuit and can plead facts to state a claim, and she has been unable to point to any

15  prejudice that would result from a stay.  This is particularly true given the strong policies against

16  discovery in this situation advocated by the United States Supreme Court and Ninth Circuit Court,

17  as well as the significant potential burden on Olympus and the absence of any potential prejudice

18  to Plaintiff.

19         **b.**      **Plaintiff Misses the Point on Standing**

20         Plaintiff succinctly addresses her lack of injury and standing by contending that her post-

21  warranty claims are not barred because she does not rely on the warranty.  Plaintiff relies solely

22  on *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000 (C.D. Cal. 2010) to support her contention.

23  *Lima*, however, is distinguishable on several grounds.  In *Lima*, the plaintiff filed suit on

24  November 23, 2009, asserting claims under the CLRA based on allegations that Gateway

25  affirmatively misrepresented the performance of one of its LCD monitors.  Specifically, the

26  plaintiff alleged that Gateway had stated its monitor had a minimum life of five years, well

27  beyond the warranty period, as well as the ability to connect to devices.  *Id*. at 1002.  Plaintiff

28  claimed his monitor malfunctioned relatively soon after purchase, and that Gateway's promised

DLA PIPER LLP (US)
SAN DIEGO

    JOINT STATEMENT RE: MOTION TO STAY DISCOVERY AND DISCLOSURES
(2:10-CV-02630-JAM-KJN)

1   connectivity capabilities that were not available without the purchase of additional accessories.

2   *Id*. at 1002-03.  Distinguishing *Daughtery* on the grounds that Gateway made statements

3   extraneous to the warranty, the court noted the promise of a five-year life and connectivity that set

4   expectations beyond the terms of the warranty.  *Id*. at 1002.

5         Here, unlike the plaintiff in *Lima*, Plaintiff has not alleged how the representations by

6   Olympus were false or misleading in light of its other representations.  Moreover, contrary to

7   Plaintiff's assertions below, the allegations of the complaint do allege that Plaintiff relied on

8   warranty provisions and advertisements that simply reiterate the terms of the warranty.  (FAC at

9   ¶¶ 32-36.)  Plaintiff has not alleged that Olympus made any representations that were inconsistent

10  with its warranty.  Furthermore, unlike in *Lima*, Plaintiff has not alleged that Olympus made any

11  representations regarding the useful life of the characteristics it identified in its advertisements.

12  Such an affirmative representation is a prerequisite to determining whether an omission is

13  actionable.  In the absence of a contrary representation, "where a manufacturer has expressly

14  warranted a product, consumers can only expect that product to function properly for the length

15  of the manufacturer's express warranty."  *In re Sony*, 2010 WL 4892114, *5 (S.D. Cal. Nov. 30,

16  2010).  Because Plaintiff has not met her burden in alleging such facts, her claims will be

17  dismissed with prejudice.

18        **c.**     **Plaintiff's Fraud Argument Illustrates the Defects in Her Claim**

19        Similarly, Plaintiff's assertion that she has stated her fraud-based claims with specificity

20  lacks merit.  Once again, Plaintiff attempts to analogize the facts of this case with those in *Lima*.

21  Unlike in this case, the plaintiff in *Lima* alleged facts describing "in detail how the alleged

22  representations were false or misleading."  710 F. Supp. 2d at 1007.  The court noted, "[the

23  complaint] states that Gateway advertised the monitor as having a resolution of 2,560 x 1,600

24  pixels whereas the monitor could not achieve such resolution without the purchase of additional

25  accessories."  *Id*.  Here, Plaintiff Mlejnecky has not identified how Olympus's representation of

26  its camera's shockproof and waterproof features was false or misleading.  Nor can she, because

27  the statements challenged by Plaintiff simply reiterate the terms of the express warranty, and

28  Plaintiff makes no allegation that the warranty was breached.  Plaintiff's failure to allege facts

-11-

1    sufficient to show that any statements made by Olympus were false or that Olympus had a duty to

2    make additional disclosures is fatal to her claims.

3              d.      **Plaintiff Relies on Issues That are Irrelevant to This Motion**

4         Unable to rebut the dispositive arguments in Olympus's motion regarding standing due to

5    lack of injury and an inability to state facts to allege her claims, much of Plaintiff's contentions

6    and memorandum of law (below) refer to the other grounds raised on Olympus' motion to

7    dismiss, which Olympus does not refer to on this motion because they address only part of

8    Plaintiff's claims and are not dispositive of the entire action.  (*See* Part B.2.b. subparts ii and iv.)

9              e.      **Plaintiff's Argument That Discovery is Relevant to Olympus'**
                       **Motion is Without Merit**
10

11        Plaintiff's argument below that a stay should be denied because the discovery requested

12   "could be" relevant to Olympus' motion to dismiss fails for several reasons.  (*See* Part B.2.d.)

13   First, the argument ignores the primary dispositive ground upon which Olympus' motion is based

14   – Plaintiff's lack of standing.  Second, Plaintiff's pleading demonstrates that no amount of

15   discovery can cure her pleading deficiencies.  Courts have repeatedly held that representations

16   consistent with warranties, which are not alleged to have been breached with respect to plaintiffs,

17   cannot constitute misrepresentations upon which a CLRA or UCL claim may be based.  *See, e.g.*,

18   *Daugherty*, 144 Cal. App. 4th at 836-37; *In re Sony*, 2010 WL 4892114, *5.  Here, the statements

19   challenged by Plaintiff simply reiterate the terms of the express warranty.  Plaintiff has already

20   alleged that the warranty was not breached, so she has foreclosed any possibility of alleging

21   falsity.  No discovery can cure that defect.

22        Third, because the statements challenged by Plaintiff make no representations regarding

23   the lifespan of the part in question, no duty to disclose arises absent a risk to the safety of the

24   consumer or the general public.  If the defect poses no danger to the safety of others,

25   manufacturers have no duty to disclose a defect that may occur at any point during the life of a

26   product. *Daugherty*, 144 Cal. App. 4th at 838; *Hoey v. Sony Electronics*, 515 F. Supp. 2d 1099,

27   1101 (N.D. Cal. 2007); *Morgan v. Harmonix Music Systems, Inc.*, No. C08-5211 BZ, 2009 WL

28   2031765, *4 (N.D. Cal. July 30, 2009); *Long v. Hewlett-Packard Co.*, No. C 06-02816, 2007 WL

-12-

1   2994812, *8 (N.D. Cal. July 27, 2007). It is beyond credulity to suggest that the defect Plaintiff

2   complains about – a broken battery cover – can pose a safety risk. Nor does Plaintiff's discovery

3   seek information regarding a safety risk.

4            While at best, some discovery may be pertinent to Olympus's knowledge of a falsity at the

5   time the statements were made, as demonstrated above, no amount of discovery can lead to

6   Plaintiff alleging a falsity to begin with. Accordingly, it simply does not make sense to subject

7   Olympus to burdensome and expensive discovery at this time. This case is in its very early

8   stages, and there is plenty of time to wait until Olympus' motion to dismiss is determined, and

9   then to engage in robust and appropriate discovery.

10                        **f.        Plaintiff's Request for Fees and Costs is Baseless**

11           Finally, Plaintiff's request for fees and costs incurred in defending this motion is entirely

12   without merit for all the reasons discussed above. To the contrary, if fees and costs are to be

13   granted, Olympus should recover its expenses and is willing to submit evidence accordingly.

14                        **4.        Olympus's Conclusion**

15           In light of Olympus's pending dispositive motion to dismiss scheduled to be heard in less

16   than three weeks, the prejudice and expense that Olympus would experience in engaging in

17   discovery and disclosures prior to the dismissal of this action, and the absence of any prejudice to

18   Plaintiff in staying discovery and disclosures pending a ruling on the dispositive motion,

19   Olympus respectfully requests that the Court stay discovery and disclosures until Olympus'

20   dispositive motion can be determined.

21                                *        *        *        *        *

22   **B.        Plaintiff's Contentions and Points and Authorities**

23           In order to avoid responding to Plaintiff's discovery requests, Defendant Olympus has

24   taken the far-reaching measure of seeking a stay of all discovery prior to this Court's ruling on

25   Defendant's Motion to Dismiss. After Defendant indicated its stance to Plaintiff, Plaintiff sought

26   to reach agreement with Defendant in order to obtain limited discovery that is relevant to this

27   stage of the proceedings. Plaintiff sent Defendant a letter identifying a limited number of

28   discovery requests and asked that Defendant agree to provide responses to those limited requests.

1  Defendant refused and immediately filed this Motion for Protective Order Staying Disclosures

2  and Discovery, merely because Defendant has filed a motion to dismiss, however meritless.

3      Defendant's motion for a complete stay of all discovery on the mere basis that it has filed

4  a motion to dismiss should be denied for several reasons.  Defendant is not entitled to an

5  automatic stay simply because it has filed a motion to dismiss.  First of all, its motion to dismiss

6  lacks merit; the first amended complaint states claims for relief under California's Consumers

7  Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL").  Second, the discovery

8  sought by Plaintiff is relevant to the motion to dismiss.  Thus, discovery should proceed pursuant

9  to the Federal Rules of Civil Procedure, and Defendant's request for a complete stay of all

10  discovery, including initial disclosures, should be denied.

11  **1.      The Discovery Rules Mandate that Defendant Respond to Plaintiff's**
     **Discovery Requests and Submit Initial Disclosures**

12

13      Under Federal Rule of Civil Procedure 26, once the Rule 26(f) discovery conference has

14  occurred, a party may serve discovery requests, and the responding party is obligated to respond

15  within the timelines set forth in the rules.  In addition, the parties generally must make initial

16  disclosures at or within 14 days after the Rule 26(f) conference.  Fed. R. Civ. P. 26(a)(1)(C).  A

17  party has no right to an automatic stay of discovery merely because it has filed a motion to

18  dismiss.  *In re Valence Tech. Sec. Litig.*, No. C 94-1542-SC, 1994 WL 758688, at *2 (N.D. Cal.

19  Nov. 18, 1994) (stating that "courts have not looked favorably upon granting a blanket stay of

20  discovery pending resolution of a challenge to the legal sufficiency of a plaintiff's complaint").

21  Rather, in order to obtain an order allowing a party to avoid responding to discovery requests, the

22  party must show "good cause" for such a broad and far-reaching remedy. Fed. R. Civ. P. 26(c)(1);

23  *see also Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.*, Civ. No. S-07-0142 LKK GGH,

24  2007 WL 1146607, at *1 (E.D. Cal. April 19, 2007).

25  **2.      Defendant Lacks Good Cause for a Complete Stay of All Discovery**

26          **a.      Defendant is unable to satisfy the strict good cause standard**

27      In order to show "good cause" for a discovery stay in the Ninth Circuit, Defendant "must

28  show more than an apparently meritorious 12(b)(6) claim." *Twin City Fire Ins. Co. v. Employers*

-14-

*Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989).  A district court must be "<u>convinced</u> that the plaintiff will be unable to state a claim for relief" in order to find good cause exists.  *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981), *cert. denied*, 455 U.S. 942, 102 S. Ct. 1437, 71 L. Ed. 2d 654 (1982) (emphasis added).

Federal courts, including the Eastern District of California, apply a two prong analysis to determine whether to grant a protective order staying discovery before other pending motions can be heard.  *Seven Springs*, 2007 WL 1146607 at *1.

> First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. . . .  Second, the court must determine whether the pending dispositive motion can be decided absent additional discovery. . . .  If either prong of this test is negative, discovery proceeds.

*Id.* at *1-2 (internal citations omitted).

In *Seven Springs*, the plaintiff argued that the first prong was not met because the defendant would not ultimately be successful on its motion to dismiss, and therefore the motion was not dispositive of the proceedings.  *Id.* at *2.  This court held that to succeed in proving the first prong, the defendant cannot merely show that it filed a "dispositive" motion to dismiss.  *Id.* at *2.  Rather, in order to obtain a stay of discovery, <u>the moving party has the burden to show "by clear and convincing evidence</u>, that it will prevail on the merits of its dispositive motion."  *Id.* (emphasis added); *see also Twin City Fire Ins.*, 124 F.R.D. at 653 (citing *Kiblen v. Retail Credit Co.*, 76 F.R.D. 402, 404 (E.D. Wa. 1977)) (emphasizing that the burden is on the moving party to show a "particular and specific demonstration of fact, as distinguished from conclusory statements, in order to establish good cause").  Because this court determined in *Seven Springs* that the claims were not "clearly decided in [defendant]'s favor," the motion to stay discovery was denied.  *Id.* at *4.

In *Seven Springs*, unlike here, this Court had the benefit of the plaintiff's full briefing in opposition to the motion to dismiss.  *Id.* at *1.  Here, Defendant cannot show "by clear and convincing evidence, that it will prevail on the merits of its dispositive motion" because Plaintiff has not even had an opportunity to file an opposition to that motion.  In addition, a brief review of the merits of Defendant's motion to dismiss reveals that Defendant will not prevail on that

-15-

1  motion.  *See id.* at *2 (stating that the court "must take a 'peek' at the merits in order to assess the

2  validity of the stay of discovery motion").

3       Furthermore, Defendant is unable to satisfy the second prong of the good cause test

4  because additional discovery could be relevant to this court's determination of the motion to

5  dismiss.  As Plaintiff's counsel pointed out in a December 13, 2010 letter to Defendant's counsel,

6  Plaintiff was willing to limit discovery to those requests that are relevant to this stage of the

7  proceedings.  Exhibit B (December 13, 2010 letter).  In the letter, Plaintiff's counsel identified a

8  limited number of discovery requests that were relevant to the Motion to Dismiss, but Defendant

9  refused to consider responding to <u>any</u> discovery, even after being presented with these reasonable

10  limitations.  Not only has Plaintiff identified specific requests that are relevant to the Motion to

11  Dismiss, but Defendant's Motion to Dismiss itself also implies that discovery could provide

12  information to cure alleged deficiencies in Plaintiff's allegations.  *See infra* Section IV.B.2.d.

13       For these reasons, Defendant is unable to prove "good cause" warranting a stay of

14  discovery.

15                    **b.       Defendant cannot show by clear and convincing evidence that it
                                will prevail on the merits of its Motion to Dismiss.**
16

17       Defendant's motion to dismiss Plaintiff's claims is meritless.  It misinterprets California

18  law and ignores allegations in the First Amended Complaint ("FAC") in order to reach the

19  conclusion that Plaintiff fails to state a claim.  Essentially, Defendant makes four arguments: (1)

20  Plaintiff lacks a claim because her camera failed beyond the limited warranty period; (2) Plaintiff

21  lacks standing; (3) Plaintiff has failed to plead her "fraud" claims with specificity; and (4)

22  Plaintiff has failed to allege sufficient facts supporting the elements of her "unfair" claim.  All

23  four arguments should be rejected.

24                    **(1)      The existence of a limited warranty does not preclude
                                Plaintiff's claims.**
25

26       Defendant argues that because Plaintiff's camera failed when used as advertised after the

27  warranty period expired, she lacks a valid claim.  Defendant's argument is not supported by

28  California law.  Here, Plaintiff does not rely on any warranty to give rise to her claims.  She has

-16-

1    made no express or implied warranty claims.  Rather, her claims arise under the CLRA and UCL.

2    Thus, the warranty has no effect on her affirmative misrepresentation claims.  *See Lima v.*

3    *Gateway, Inc.*, 710 F. Supp. 2d 1000, 1005-06 (C.D. Cal. 2010) (stating that because "Plaintiff's

4    claim does not rely on any warranty provision," he "does not need to allege the particular date

5    that his monitor malfunctioned in order to state a valid CLRA claim" and has "no obligation to

6    allege facts related to Gateway's proposed warranty based defenses").

7        Under California law, even where a manufacturer of consumer goods has warranted a

8    product for only a limited period, the manufacturer can be liable under the CLRA or UCL for

9    failing to disclose information about a defect that manifests itself outside the express warranty

10    period if (1) the omitted fact runs counter to a representation made by the defendant, or (2) the

11    defendant had a duty to disclose the omitted information.  *See Daugherty v. American Honda*

12    *Motor Co.*, 136 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118, 126 (2006); *Oestreicher v. Alienware*

13    *Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008).  Unlike in *Daugherty* and *Oestreicher*, there is

14    no question in this case that Plaintiff alleged affirmative misrepresentations in the FAC.  FAC at

15    ¶ 3 ("In advertisements, marketing materials, and on its website, Olympus represents and

16    emphasizes that the Stylus SW cameras are waterproof and shockproof.  Specifically, Olympus

17    represents that the Stylus 1030 SW cameras withstand drops of up to 6.6 feet and function in

18    water up to 33 feet deep.  Olympus also represents that the Stylus 850 SW withstand drops of 5

19    feet and function in water up to 10 feet deep.  These statements, on which Plaintiff and class

20    members justifiably relied, are untrue."); *see also* FAC ¶¶ 4, 8, 23-25, 30, 48-49, 52, 62, 75, 88,

21    101-102, 108.  Indeed, Defendant's affirmative misrepresentations that the Stylus SW cameras

22    can function in water up to 33 feet deep and can survive drops of up to 6 feet above ground form

23    the very basis for Plaintiff's claims.  FAC ¶ 8.  Defendant's omission of the defects inherent in its

24    Stylus SW cameras "runs counter" to these affirmative misrepresentations.  Thus, Plaintiff

25    satisfies the first prong of the test for claims based on defects manifesting themselves post-

26    warranty and states valid claims regardless of the expiration of any warranty.  *See Lima*, 710 F.

27    Supp. 2d at 1006 (holding that Plaintiff stated a claim based on affirmative misrepresentations

28    regardless of whether warranty had expired when the defects manifested themselves).

1

**(2)    Plaintiff Stefanie Mlejnecky has standing to bring her claims under the CLRA and UCL.**

2

3    Defendant makes three standing arguments, all of which are meritless.  First, Defendant

4    argues that Plaintiff lacks standing because the lawsuit alleges defects in both the Stylus 1030 SW

5    and the Stylus 850 SW, whereas she only purchased a Stylus 1030 SW.  Memorandum of Points

6    & Authorities In Support of Motion to Dismiss ("Defendant's Motion") at 7.  However,

7    Plaintiff's lawsuit alleges that the Stylus SW cameras possess a <u>common defect</u>, regardless of the

8    particular model, that causes the cameras to fail when used underwater at levels advertised as safe

9    and when dropped from levels advertised as safe.  *See* First Amended Complaint ("FAC") at ¶¶ 4,

10   26, 27, 29.   In addition, the deceptive advertisement Plaintiff viewed, which is described in the

11   FAC, is an advertisement for all Stylus SW cameras, not only a certain model.  FAC at ¶ 8.  In a

12   consumer class action, a Plaintiff may challenge misrepresentations related to a line of products

13   with common defects even if she only purchased one particular model of the defective product.

14   *See, e.g., Hewlett-Packard v. Superior Court*, 167 Cal. App. 4th 87, 83 Cal. Rptr. 3d 836, 837-38,

15   842-43 (2008) (allowing class action lawsuit to proceed even past class certification stage based

16   on a "common defect in the HP notebook computers and their display screens" even though the

17   named plaintiff had purchased only one of the many models at issue).

18   Defendant's argument is a premature, veiled attempt to challenge the "typicality" or

19   "commonality" of Plaintiff's claims for purposes of Rule 23 class certification.  Thus, the

20   argument is not only without merit, it is also not properly made at the motion to dismiss stage, in

21   which the court's inquiry is limited to whether, accepting all factual allegations as true, Plaintiff

22   has stated a claim for relief.  *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

23   1996) ("A complaint should not be dismissed unless a plaintiff can prove no set of facts in

24   support of his claim which would entitle him to relief.").

25   Even if Plaintiff was unable to establish standing for purposes of the Stylus 850 SW,

26   which is alleged to contain the same exact defect as the Stylus 1030 SW, she would still have

27   standing to sue regarding the misrepresentations made about the Stylus 1030 SW.

28   /////

Second, Defendant argues that because Plaintiff's camera's defect exhibited itself when it experienced impact, as opposed to when being used underwater, she "fails to allege any injury relating to her camera's waterproof features."  Defendant's Motion at 7:25-26.  Defendant's argument ignores Plaintiff's allegation in the FAC that the cameras have <u>common defects</u> "that cause the cameras to fail both when underwater at what Olympus advertises at safe levels <u>and</u> when dropped from what Olympus advertises as safe heights."  FAC at ¶ 26; *see also* ¶ 27.  Whether the defect exhibits itself when used underwater or when experiencing impact is immaterial to whether Plaintiff can state a claim based on misrepresentations under the CLRA or UCL.

Defendant's third standing argument is even weaker than its first two.  Defendant argues that even though Plaintiff explicitly alleged in the FAC that she viewed and relied on statements in magazine advertisements and the Olympus website about the Stylus SW cameras, Plaintiff lacks standing to "challenge" statements made in other "marketing materials" that are referenced in the FAC.  Defendant's Motion at 8:23-9:4.  What Defendant ignores is that the FAC alleges that the Olympus magazine advertisements, Olympus website and Olympus marketing materials all make the same affirmative misrepresentations about the purported ability of the Stylus SW cameras to withstand underwater use and to withstand drops from certain levels.  FAC at ¶¶ 3, 8, 24-25.  Plaintiff specifically identifies the statements in magazine advertisements and website statements that she relied on in purchasing her defective Stylus SW camera.  *Id.* at ¶ 8.  Her specific identification of these statements is more than sufficient to provide her standing.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P.3d 20, 40, 93 Cal. Rptr. 3d 559 (2009) (holding "where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements"); *Lima*, 710 F. Supp. 2d at 1007 (holding that plaintiff's claims could proceed because the complaint "identified the substance of the alleged misrepresentations").  The case Defendant cites for support, *Durell v. Sharp Healthcare*, is distinguishable because in that case, the plaintiff did not allege that he relied on the misrepresentations at issue in the case.  183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682, 694

-19-

(2010).  Here, Plaintiff specifically identifies the misrepresentations she relied on and the context in which she viewed them, and therefore she has standing to challenge them.  *See* FAC at ¶ 8.

> **(3)      Plaintiff adequately stated her fraud-based claims with specificity.**

Defendant argues that Plaintiff has failed to plead her fraud-based claims with specificity pursuant to Rule 9(b).  Defendant's Motion at 9.  Defendant's argument ignores the statements in the FAC specifically identifying Olympus's fraudulent actions.  A full review of the FAC reveals that Plaintiff has pled her fraud based claims with sufficient specificity to withstand a Rule 9(b) challenge.

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind <u>may be alleged generally</u>" (emphasis added).  "A pleading is sufficient under Rule 9(b) if it 'state[s] the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation.'"  *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, Nos. 08-CV-2276-IEG (WVG), 09-CV-0620-IEG (WVG), 09-CV-0736-IEG (WVG), 09-CV-2703-IEG (WVG), 2010 WL 4892114, *3 (S.D. Cal. Nov. 30, 2010) (quoting *Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981)).  Adequate allegations include "the who, what, when, where, and how of the misconduct charged."  *Lima*, 710 F. Supp. 2d at 1007 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted)).

In *Lima*, the court held that the plaintiff's complaint regarding misrepresentations in the sale of computer monitors was sufficiently specific because (1) it repeatedly identified the defendant as the entity responsible for the misrepresentations; (2) it identified "the substance of the alleged misrepresentations," including in some cases direct quotes; (3) it described the general time frame of the alleged statements; (4) it described where the statements occurred (on press releases, the company website, etc.); and (5) it described "in detail how the alleged representations were false or misleading."  *Id.* at 1007.  The allegations in Plaintiff's complaint in this case are also sufficiently specific: (1) the FAC repeatedly identifies Olympus as responsible

-20-

for the misrepresentations, *see, e.g.,* FAC ¶¶ 3, 4, 5, 8, 24-25, 30, 37, 48, 62, 75, 88, 101-102, 108; (2) the FAC specifically identifies the substance of the misrepresentations, including in some cases direct quotes, *see, e.g.,* FAC ¶¶ 3, 8, 24-25, 30, 37, 48; (3) the FAC does not merely describe the general time frame of the misrepresentations; it includes the specific month and year that the misrepresentations appeared in Parents magazine and on the Olympus website, *see* FAC ¶ 8; also, the FAC contains allegations that the misrepresentations are still on Olympus's website, and identifies the last date the website was accessed, *see* FAC ¶¶ 24-25, 37; (4) as discussed above, the FAC specifies that the misrepresentations appeared in Parents magazine and on Olympus's website, *see* FAC ¶¶ 8, 24-25, 37;  and (5) the FAC describes how the representations are false by stating that the cameras fail or malfunction when underwater at what Olympus advertised as safe levels or when dropped what Olympus advertised as safe levels, despite Olympus's statements to the contrary, *see* FAC ¶¶ 4-5, 8, 26-29, 48.  Thus, as in *Lima*, Plaintiff's fraud allegations in the FAC are specific enough to provide Defendant "sufficient notice to defend against Plaintiff's charges."  *Lima*, 710 F. Supp. 2d at 1007.  Thus, Plaintiff satisfies the requirements of Rule 9(b).

> **(4)** **Plaintiff pled sufficient facts to support her "unfair business practices" claim**

In order to support its argument that Plaintiff failed to allege facts to support the elements of her "unfair" claim, Defendant misconstrues the case law of California and the Ninth Circuit on the proper test to apply for <u>consumer</u> claims alleging "unfair business practices" under the UCL. Defendant goes to great lengths to analyze the opinion in *Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*, an antitrust case, which held that "unfairness <u>to competitors</u> under section 17200" must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." 20 Cal. 4th 163, 186-87 (1999) (emphasis added).  However, as Defendant admits, the *Cel-Tech* court explicitly stated that the "tethering test" did not apply to lawsuits brought by consumers under the "unfair" prong of the UCL.  *Id.* at 187 n.12.  In addition, despite Defendant's misleading arguments, in *Lozano v. AT&T Wireless, Services, Inc.*, the Ninth Circuit affirmed the use of the balancing test for consumer claims under the "unfair" prong of the

-21-

1   UCL, which requires the court to weigh the utility of the defendant's conduct against the gravity

2   of the harm to the plaintiff.  504 F.3d 718, 736 (9th Cir. 2007).

3       Here, Plaintiff has pled sufficient facts to support her claim for "unfair business practices"

4   under the standards applied by courts interpreting the UCL, including the *Lozano* court.  Indeed,

5   the FAC explicitly states, "Defendant's unfair acts or practices (including its misrepresentations

6   and omissions) cause injuries to consumers, including Plaintiff, which outweigh their benefits."

7   FAC ¶ 82.  Under *Lozano*, this statement is sufficient to survive a motion to dismiss.  *See* 504

8   F.3d at 736.  Furthermore, even if "tethering" to public policy was required, Plaintiff adequately

9   alleged "tethering" by stating in the FAC that "Defendant's 'unfair' business acts or practices

10  violate established public policy reflected in the UCL and CLRA, including but not limited to

11  California Civil Code Sections 1770(a)(5) and 1770(a)(7) and California Business and

12  Professions Code Section 175000."  FAC ¶ 83.  At the motion to dismiss stage, this statement

13  tethering Plaintiff's claims to a "legislatively declared policy" would be sufficient if this standard

14  were to apply.

15      Thus, under either standard, Plaintiff has pled sufficient facts to support her "unfair

16  business practices" claim.

17              **c.      Because Defendant cannot show by clear and convincing
                          evidence that it will prevail on its motion to dismiss, Its Motion
18                        for a Protective Order Staying Discovery must be denied.**

19      For the reasons set forth above, Defendant's motion to dismiss is meritless.  It is based on

20  misinterpretations of the case law interpreting the CLRA and the UCL and a failure to recognize

21  the explicit allegations in the FAC.  Thus, Defendant will not likely be successful on its motion to

22  dismiss.  In order to obtain a discovery stay, it must prove more than potential success on that

23  motion.  Indeed, Defendant must show by "clear and convincing evidence" that it will prevail on

24  its motion to dismiss.  *Seven Springs*, 2007 WL 1146607 at *2.  Based on the above analysis,

25  Defendant is unable to make such a showing.  Therefore, Defendant's motion must be denied.

26  /////

27  /////

28  /////

**d.  Because the limited discovery plaintiff sought is relevant to the Motion to Dismiss, there are additional grounds to deny Defendant's Motion for a Protective Order Staying Discovery.**

Even if Defendant could meet the demanding standard of showing "clear and convincing evidence" that it will prevail on its motion to dismiss, it is still not entitled to a discovery stay because the discovery sought could be relevant to Defendant's Motion to Dismiss.

Plaintiff offered to limit the discovery requests Defendant would respond to prior to this Court's ruling on Defendant's Motion to Dismiss to those requests relevant to this stage of the proceedings.  Exhibit B (December 13, 2010 letter).  The limited requests identified in the letter seek information regarding the common defects inherent in all Stylus SW cameras, Olympus's notice of the defects, and Olympus's knowledge that it was making material misrepresentations and omissions.  *Id.*  All of these issues are relevant to Defendant's arguments in the Motion to Dismiss.  They concern the common nature of the defects among all Stylus SW cameras and the fact that Olympus had knowledge of the defects when it disseminated the material misrepresentations regarding the qualities of the camera.  Questions about these issues are presented by the Motion to Dismiss and Plaintiff's potential response to the Motion to Dismiss.  However, Defendant refused to consider responding to any discovery, even after being presented with these reasonable limitations.  Because the discovery identified by Plaintiff in the December 13, 2010 letter is relevant to Defendant's arguments in its Motion to Dismiss, this Court should deny the request for a complete stay of discovery.

Moreover, Defendant's own arguments in its Motion to Dismiss imply that additional information acquired through discovery could cure alleged deficiencies in the FAC.  For example, Defendant asserts that Plaintiff failed "to allege that Olympus made any false statements, or explain how any statements were false when made."  Defendant's Motion at 12:20-21.  Defendant also alleges that "Plaintiff merely relies on conclusions that Olympus knew of the purported defect."  *Id.* at 12:23-24.  While Defendant's arguments ignore the language of the FAC—which provides sufficient specificity as discussed above (*supra* Section IV.B.2.b.iii)—the arguments also indicate that information obtained through discovery could cure the alleged deficiencies.  In discovery, Plaintiff sought, for example, documents "reflecting the results of ANY water

-23-

1  exposure testing, impact or shock testing, bench testing, fatigue testing, or durability testing

2  RELATING to the AFFECTED CAMERAS or the battery card covers and/or battery card cover

3  latches of the AFFECTED CAMERAS." *See* Exhibit A, Request for Production No. 20.  The

4  response to this request could show Defendant's knowledge of the defects and, therefore, could

5  provide further support for "how" Defendant's statements regarding the "waterproof" and

6  "shockproof" qualities of the cameras were false when made.  Thus, the limited discovery

7  Plaintiff sought is relevant to Defendant's arguments in its Motion to Dismiss.  For this reason,

8  Defendant is unable to prove "good cause" for a discovery stay under the second prong of this

9  Court's test.  *See Seven Springs*, 2007 WL 1146607 at *1-2.

10  **3.  Plaintiff is Entitled to Her Fees and Costs for Responding to Defendant's Motion for a Protective Order**

11

12  The Federal Rules of Civil Procedure provide that if a discovery motion is denied, the

13  court must require the moving party to pay the reasonable expenses incurred in opposing the

14  motion, including attorneys' fees, unless the motion was substantially justified. Fed. R. Civ. P.

15  37(a)(5)(B). Rule 37(a)(5) applies to motions for protective orders. Fed. R. Civ. P. 26(c)(3).

16  Plaintiff requests that Defendant pay the fees and costs incurred in responding to Defendant's

17  meritless motion. First, as discussed above, Defendant is unable to prove "by clear and

18  convincing evidence" that its Motion to Dismiss will be granted.  Thus, Defendant lacks good

19  cause for the protective order, and its motion for the protective order is not substantially justified.

20  Second, Defendant asks for a blanket protective order staying all discovery rather than

21  cooperating to determine a more limited discovery plan at this stage.  Defendant has made no

22  particularized showing of good cause with respect to any specific discovery requests. Defendant's

23  refusal to consider even limited discovery provides further support for an award of fees and costs.

24  Thus, Defendant's legally unsupported request for a stay of all discovery should not only be

25  rejected, but Plaintiff should be reimbursed for the fees and costs incurred in responding to it. If

26  the Court determines that Plaintiff is entitled to her fees and costs, Plaintiff will then submit a

27  declaration setting forth the fees and costs incurred.

28  /////

4.    **Plaintiff's Reply to Defendant Olympus's Contentions and Points and Authorities**

Defendant misconstrues the discovery stay standard and ignores relevant case law that approves CLRA and UCL claims based on misrepresentations regardless of the existence or expiration of any warranty.  In addition, Defendant's argument that because the motion to dismiss is scheduled to be heard on February 23, 2011 ("less than three weeks"), it should not have to provide discovery responses which were due in early January, contravenes the strict deadlines in the Federal Rules of Civil Procedure.  For the reasons below and the reasons stated in Plaintiff's Contentions and Points and Authorities, this Court should deny Defendant's request to stay discovery, order Defendant to respond to Plaintiff's discovery requests, and award Plaintiff reasonable attorneys' fees and costs.

a.    **Defendant Misconstrues the Standard for a Motion Seeking a Discovery Stay.**

Defendant concedes that California federal district courts apply a two-prong test to determine whether a party has "good cause" for a protective order staying discovery pending a decision on a motion to dismiss.  *See* Defendant's Contentions at Section IV.A.1. (citing *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 220 F.R.D. 349, 351-52 (N.D. Cal. 2003)).  First, the pending motion must be "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed."  *Seven Springs*, 2007 WL 1146607 at *1; *Pac. Lumber Co.*, 220 F.R.D. at 351-52.  Second, "the court must determine whether the pending dispositive motion can be decided absent additional discovery."  *Seven Springs*, 2007 WL 1146607 at *2; *Pac. Lumber Co.*, 220 F.R.D. at 352.  "If the court answers these two questions in the affirmative, a protective order may issue.  However, <u>if either prong of this test is not established, discovery proceeds</u>."  *Id.* (emphasis added).  In order to find that the pending motion is "dispositive" of the entire case, the Court must be "convinced that plaintiff will be unable to state a claim for relief."  *Pac. Lumber Co.*, 220 F.R.D. at 351.  As another court in this district concluded, the standard applied in the Eastern District of California requires a defendant to show, "by clear and convincing evidence, that it will prevail" on its motion to dismiss.  *Seven Springs*,

-25-

1  2007 WL 1146607 at *2.  "Any lesser standard encourages blanket discovery stays where such

2  stays are probably not warranted[.]"  *Id.*

3       Defendant concedes this is the standard but proceeds to ignore its implications, implying

4  courts regularly stay discovery merely because a motion to dismiss has been filed.  That argument

5  has been soundly rejected by federal courts, including several California courts.  *See Seven*

6  *Springs*, 2007 WL 1146607 at *1-2; *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal.

7  1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P.

8  12(b)(6) would stay discovery, the Rules would contain a provision to that effect.").[2]

9       Defendant resorts to Ninth Circuit cases decided before the development of the current

10  standard to support its argument that discovery should be stayed on the basis that it filed a motion

11  to dismiss.  *See* Olympus's Contentions and Points and Authorities ("Defendant's Contentions")

12  at Section IV.A.1 (citing *Little*, *Jarvis*, *Rae*, and *Rutman*).  While those cases indicate that

13  "furthering the goal of efficiency for the court and the litigants" may be considered in

14  determining whether to stay discovery, they do not state <u>the standard that must be applied</u> to

15  determine whether to stay discovery.  Rather, they recite general principles to be applied in most

16  discovery disputes.[3]  Their application of these general principles has been superseded by the

17  strict standards outlined in *Seven Springs* and *Pac. Lumber Co.  See Seven Springs*, 2007 WL

18  1146607 at *1-2; *Pac. Lumber Co.*, 220 F.R.D. at 351-52.

19       The cases are also distinguishable on other grounds.  *Little* involved a distinct legal issue:

20  whether a stay of discovery was appropriate before determination of the threshold issue of

21  immunity, which would have disposed of all claims.  863 F.2d at 685.  Here, there is no immunity

22  issue, and thus *Little* would not control even absent the development of the new standard.  In

23  *Rutman*, which was also cited by Defendant, the court was not considering a district court ruling

24  [2] Other federal district courts have agreed that the mere filing of a motion to dismiss is insufficient to support a
25  discovery stay.  *Solomon Realty Co. v. Tim Donut, U.S. Ltd.*, No. 2:08-cv-561, 2009 WL 2485992, *2 (S.D. Ohio
Aug. 11, 2009) (stating "one argument that is usually deemed insufficient to support a stay of discovery is that a party
26  intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6)"); *Twin City
Fire Ins. Co.*, 124 F.R.D. at 653 ("To show good cause in the Ninth Circuit, the moving party must show more than
27  an apparently meritorious 12(b)(6) claim").
[3] Defendant's arguments regarding the balancing of the burden and likely benefit of discovery may be relevant to
28  potential limitations on discovery, but they cannot overcome the well-established test for "good cause."  *See Seven
Springs*, 2007 WL 1146607 at *1-2

DLA PIPER LLP (US)
SAN DIEGO

-26-

1   on a motion for a stay of discovery nor applying the standard for a stay of discovery when a

2   motion to dismiss has been filed.  Rather, the plaintiff in *Rutman* was essentially seeking a stay of

3   the motion to dismiss *in order to* conduct discovery.  *Id.* at 738.  The *Rutman* court's decision not

4   to permit additional time for discovery before ruling on the pending motion to dismiss was based

5   on the "prohibitive" cost of discovery *in antitrust actions*.  *Id.*  The current case has a different

6   procedural posture, which subjects the motion to the strict standard applied in *Seven Springs*.  In

7   addition, it involves very different factual issues than those presented by the antitrust claims in

8   *Rutman*.  Thus, *Rutman*, a 1987 antitrust case decided before development of the currently

9   applicable standard, is not relevant to the Court's inquiry here.[4]

10      Finally, Defendant points to the United States Supreme Court opinions in *Twombly* and

11  *Iqbal* to support its motion for a complete discovery stay.  However, courts addressing similar

12  motions to stay discovery have held that "*Twombly* and *Iqbal* do not dictate that a motion to stay

13  should be granted every time a motion to dismiss is placed before the Court."  *Tamburo v.*

14  *Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 17, 2010); *see also Solomon*

15  *Realty Co*, 2009 WL 2485992 at *3 ("Despite the defendants' interpretation of new pleading

16  standards in the wake of *Twombly* and *Iqbal*, the Court is not persuaded that this case presents

17  any need for departure from the general rule that a pending motion to dismiss does not warrant a

18  stay of discovery.").

19      For the reasons stated above, this Court should reject Defendant's reliance on an outdated

20  standard for a discovery stay and apply the framework more recently adopted by California

21  federal courts.

22  /////

23  /////

24  /////

25  /////

26

27  [4] Defendant also cites *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987), and *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984), for the proposition that a discovery stay must be issued unless there are factual issues raised by a 12(b) motion.  *See* Defendant's Contentions at Section IV.A.1.  This test has also been superseded by the *Seven Springs* standard.  *See, e.g., Seven Springs*, 2007 WL 1146607 at *1-2; *Pac. Lumber Co.*, 220 F.R.D. at 351-52.

28

**b.    Defendant's Argument That Its Motion to Dismiss Justifies a Stay Misinterprets the Relevant Case Law and Rule 9(b).**

**(1)    Defendant's standing arguments misinterpret the relevant case law**

Defendant's standing arguments ignore the fact that Plaintiff's claims are based on affirmative misrepresentations.  The case law – including cases Defendant cites – make clear that CLRA and UCL claims based on misrepresentations are not precluded by the expiration of an express warranty.  In *Daugherty*, the California Court of Appeal carved out an exception for cases based on misrepresentations, holding that "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  136 Cal. App. 4th at 835.  Two recent California federal district court opinions Defendant cites, *Oestreicher* and *In re Sony Grand Wega*, recognize the exceptions created by the *Daugherty* court.  *See Oestreicher*, 544 F. Supp. 2d at 969 (acknowledging "the *Daugherty* court . . . created exceptions if: 1) the omission is 'contrary to a representation actually made by the defendant'; or 2) the omission pertains to 'a fact the defendant was obligated to disclose'" (quoting *Daugherty*, 136 Cal. App. 4th at 835-36)); *In re Grand Sony Wega*, 2010 WL 4892114 at *10 (holding manufacturer cannot be liable "for failing to disclose a defect that manifests itself outside of the Express Warranty period, **unless** (1) the omitted fact runs counter to a representation made by the defendant, or (2) the defendant had a duty to disclose the omitted information" (citing *Oestreicher*, 544 F. Supp. 2d at 969) (emphasis added)).

Here, as discussed above in Section IV.B.2.b.i, Plaintiff has alleged affirmative representations made by Defendant regarding the waterproof and shockproof qualities of its Stylus SW cameras.  The omission of the fact of these cameras' exhibited defects is contrary to the representations made by Defendant.  Defendant does not even attempt to explain away the "affirmative representation" exception to the warranty rule.  Instead, it simply ignores the relevant language of *Daugherty*, *Oestreicher* and *In re Sony Grand Wega*.  Under the well-established "affirmative representation" exception to the warranty rule, however, Plaintiff has standing to raise her CLRA and UCL claims.

1

(2)     **Defendant's arguments regarding Federal Rule of Civil Procedure 9(b) lack merit.**

2

3     Defendant makes three arguments regarding Rule 9(b), all of which lack merit.  First,

4 Defendant asserts that Plaintiff cannot plead facts sufficient to show Defendant's statements were

5 false or that Defendant had a duty to make additional disclosures.  To the contrary, the FAC has

6 numerous allegations regarding the falsity of Defendant's specific misrepresentations regarding

7 the waterproof and shockproof qualities of the Stylus SW cameras. FAC ¶¶ 3-4, 8, 23-25, 29, 30,

8 48-49, 52, 62, 75, 88, 101-102, 108.  In addition, Defendant's duty to disclose the omitted

9 information about the Stylus SW cameras' defects arises from these misrepresentations.  *See*

10 *Daugherty*, 136 Cal. App. 4th at 835-36; *Oestreicher*, 544 F. Supp. 2d at 969; *In re Sony Grand*

11 *Wega*, 2010 WL 4892114 at *10.  Defendant's statements about the "terms of the express

12 warranty" are irrelevant because Plaintiff does not rely on the express warranty. *See Lima*, 710 F.

13 Supp. 2d at 1006 (holding that because Plaintiff's affirmative misrepresentation claim did not rely

14 on any warranty provision "Plaintiff therefore does not need to allege the particular date that his

15 monitor malfunctioned in order to state a valid CLRA claim").  The misrepresentations

16 challenged by Plaintiff are not representations in the express warranty.  Rather, they are

17 representations in the advertisements and website pages that she viewed.  FAC ¶ 8.

18     Defendant's second Rule 9(b) argument both ignores statements in the FAC and

19 misconstrues the standard for CLRA and UCL cases based on affirmative misrepresentation.

20 Defendant erroneously claims Plaintiff "has failed to allege concealment."  Section IV.A.2.b.

21 Plaintiff's FAC, however, contains numerous allegations of concealment.  FAC ¶¶ 5, 28-30, 48,

22 51, 53-54, 63, 68-69, 76, 80-81, 89-90, 93-95, 102-103, 106-108.   Defendant also implies that

23 Plaintiff must allege "representations regarding the lifespan of the part in question."  Section

24 IV.A.2.b.  The case law, however, does not require "representations regarding lifespan."  *See*

25 *Lima*, 710 F. Supp. 2d at 1006; *see also* supra Section IV.C.2.a. (discussion of *Daugherty*,

26 *Oestreicher* and *In re Sony Grand Wega*).  In addition, because the FAC alleges affirmative

27 misrepresentations, Plaintiff need not allege a safety defect.  *Daugherty*, 136 Cal. App. 4th at

28 835-36; *In re Sony Grand Wega*, 2010 WL 4892114 at *10; *Oestreicher*, 544 F. Supp. 2d at 969.

-29-

1        Finally, Defendant argues that Plaintiff either has not or cannot allege facts showing

2  Defendant knew statements were false when made or knowingly concealed information.  To the

3  contrary, Plaintiff's FAC contains multiple allegations indicating knowledge of falsity and

4  knowledge of concealment.  *See* FAC ¶¶ 5, 28-30, 51, 53-54, 63, 68-69, 76, 80-81, 89-90, 93-95,

5  102-103, 106-108.  Even if these allegations were somehow not specific enough, Defendant's

6  overdue discovery responses would likely provide the specific information that Defendant asserts

7  is missing.

8        In sum, Defendant's arguments regarding standing and Rule 9(b) misconstrue the case law

9  and ignore specific allegations in the FAC.

### c.    The Alleged Burden on Defendant Is Not Only Overstated, But Also Irrelevant to the Standard for Deciding Whether to Stay Discovery.

12        Defendant's contention that Plaintiff's requests are overly burdensome lacks merit.  In

13  opposing discovery on the grounds of overbreadth, a party has the burden "to provide sufficient

14  detail and explanation about the nature of the burden in terms of time, money and procedure

15  which would be required to produce the requested documents."  *Super Film, Inc. v. UCB Films,*

16  *Inc.*, 219 F.R.D. 649, 657 (D. Kan. 2004) (citation omitted).  "A claim that answering discovery

17  will require the objecting party to expend considerable time and effort to obtain the requested

18  information is an insufficient factual basis for sustaining an objection."  *City of Seattle v. Prof'l*

19  *Basketball Club, LLC*, No. C07-1620MJP, 2008 WL 539809, at *3 (W.D. Wash. Feb. 25, 2008)

20  (citing *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980)); *see also Biliske v.*

21  *American Live Stock Ins. Co.*, 73 F.R.D. 124, 126 (W.D. Okla. 1977) (explaining that mere fact

22  that production would be burdensome, onerous, or inconvenient is not, per se, sufficient grounds

23  for objecting to a discovery request).

24        Here, Defendant fails to meet its burden.  The declaration of Defendant's in-house

25  counsel, Michael R. Smith, which provides the sole support for Defendant's conclusory

26  allegations of burden and overbreadth, fails to explain the nature of the burden "in terms of time,

27  money and procedure which would be required to produce the requested documents."  *See Super*

28  *Film, Inc.*, 219 F.R.D. at 657.  Instead, Mr. Smith merely asserts, without identifying any specific

-30-

1   discovery requests, that "it appears" that Plaintiff's discovery requests "call for information that is

2   confidential, proprietary and/or trade secret information" and that these requests would take

3   "considerable time" to respond to. Smith Decl. ¶¶ 3–4.  Such assertions are not sufficient to

4   justify a protective order.  *See City of Seattle*, 2008 WL 539809, at *3 (citing *Roesberg*, 85 F.R.D.

5   at 296) (holding that speculative and generalized statements of the "considerable time" and effort

6   required to respond to discovery requests are insufficient grounds to avoid responding to

7   discovery); *Super Film, Inc.*, 219 F.R.D. at 657.

8       Moreover, Plaintiff has offered to limit the burden and expense of discovery at this stage

9   by seeking responses to only a limited number of discovery requests.  Exhibit B (December 13,

10   2010 letter).  Indeed, the interrogatory Defendant cites as an example of the "breadth" of

11   Plaintiff's requests was not part of that limited set of discovery requests Plaintiff proposed

12   Defendant answer at this stage.  Despite Plaintiff's attempt to work cooperatively to create a

13   phased discovery plan, however, Defendant took a hard-line approach, refusing to respond to any

14   discovery.  Defendant's refusal to cooperate, coupled with its failure to articulate any specific

15   reasons for why it should not be obligated to respond to discovery other than the filing of its

16   motion to dismiss, provide further support for rejecting its position.

17       Perhaps most importantly, the alleged "burden and expense" faced by Defendant is not

18   relevant to the applicable standard for a motion seeking a protective order staying discovery

19   pending a decision on a motion to dismiss.  As described above, the actual standard focuses on 1)

20   whether the moving party can prove by clear and convincing evidence that it will prevail on the

21   merits of the motion to dismiss, and 2) whether the motion to dismiss can be decided absent

22   additional discovery.  *See Seven Springs,* 1007 WL 1146607 at *1-2.  If "either prong of this test

23   is negative, discovery proceeds."  *Id.* at *2.  Under this test, despite the alleged "burden and

24   expense" Defendant would face in complying with the federal discovery rules, discovery must

25   proceed for the reasons described above.

26       **5.      Plaintiff's Conclusion**

27       For the reasons set forth herein, Plaintiff respectfully requests that this Court deny

28   Defendant's Motion for Protective Order Staying Disclosures and Discovery and enter an order

-31-

1    mandating that the parties submit initial disclosures within one week of the order and that

2    Defendant produce full and complete responses to Plaintiff's First Set of Interrogatories and

3    Requests for Production within two weeks of the order.  Plaintiff also respectfully requests that

4    this Court grant her reasonable attorneys' fees and costs incurred responding to Defendant's

5    meritless discovery motion, in an amount to be determined upon Plaintiff's filing of a separate

6    declaration after the Court's decision on this Motion.

7         Respectfully submitted this 24th day of January, 2011.

8    DLA PIPER LLP (US)                          TERRELL MARSHALL & DAUDT PLLC

9

10   By:  /s/ Christopher M. Young CSB #163319   By:  /s/ Beth E. Terrell, CSB #178181
          Christopher M. Young, Bar No. 163319        Beth E. Terrell, CSB #178181
11        christopher.young@dlapiper.com              Email: bterrell@tmdlegal.com
          Ryan T. Hansen, Bar No. 234329             Marc C. Cote, *Admitted Pro Hac Vice*
12        ryan.hansen@dlapiper.com                    Email:  mcote@tmdlegal.com
          Amanda Fitzsimmons, Bar No. 258888          3600 Fremont Avenue North
13        amanda.fitzsimmons@dlapiper.com             Seattle, Washington  98103
          401 B Street, Suite 1700                    Telephone: 206.816.6603
14        San Diego, California  92101-4297           Facsimile: 206.350.3528
          Telephone:  619.699.2700
15        Facsimile:  619.699.2701                    Michael F. Ram, CSB #104805
16                                                    Email:  mram@ramolson.com
     *Attorneys for Defendant Olympus Imaging*        Karl Olson, CSB #104760
17   *America Inc.*                                   Email:  kolson@ramolson.com
                                                      RAM & OLSON LLP
18                                                    555 Montgomery Street, Suite 820
                                                      San Francisco, California  94111
19                                                    Telephone:  415-433-4949
                                                      Facsimile:  415-433-7311
20

21                                                    *Attorneys for Plaintiff Stefanie Mlejnecky*

22

23

24

25

26

27

28

# EXHIBIT A

1
2
3
4
5
6
7
8

Beth E. Terrell, CSB #178181
Email: bterrell@tmdlegal.com
Marc C. Cote, *Admitted Pro Hac Vice*
Email:  mcote@tmdlegal.com
TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue North
Seattle, Washington  98103
Telephone:  206-816-6603
Facsimile:  206-350-3528

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

9
10

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

STEFANIE MLEJNECKY,

          Plaintiff,

     v.

OLYMPUS IMAGING AMERICA INC.,

          Defendant.

NO. 2:10−CV−02630−JAM−KJN

**PLAINTIFF'S FIRST SET OF
INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO
DEFENDANT**

18
19

TO:     DEFENDANT OLYMPUS IMAGING AMERICA, INC.; and
TO:     YOUR ATTORNEYS.

20

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, the following

21

First Set of Interrogatories and Requests for Production of Documents (collectively, the "First

22

Discovery Requests") are propounded to you and your attorneys of record.  These First

23

Discovery Requests are intended to draw upon the combined knowledge of you, your agents,

24

and your attorneys.

25
26
27

- 1 -

1          1.      Interrogatories

2          Pursuant to Rule 33, submit your answers to these Interrogatories in writing and under

3    oath to the undersigned counsel within thirty (30) days from the date of service upon you.  In

4    answering these Interrogatories, furnish such information as is available to you, regardless of

5    whether this information is obtained directly by you, through your agents or representatives, or

6    by any of your attorneys.   Where facts set forth in answers or portions thereof are supplied

7    upon information and belief, rather than actual knowledge, the answer should so state, and

8    specifically describe or identify the source or sources of such information and belief.  If any of

9    these Interrogatories cannot be answered in full, after exercising due diligence to secure the

10   information requested, then you should answer to the fullest extent possible, specifying the

11   reasons for your inability to answer the remainder, and stating whatever information or

12   knowledge you have concerning the unanswered portion or portions.

13          If privilege is claimed as to the information sought in any Interrogatory, state the nature

14   of the privilege claimed, and identify the dates, subject matter, locations, documents, and

15   parties involved in the communications, activities, or information that is claimed to be

16   privileged.

17          These Interrogatories are continuing in nature.  In accordance with Rule 26, you are

18   required to supplement your answers to the Interrogatories in the event new or additional

19   information becomes known to you.

20          With respect to any Interrogatory calling for the identification or listing of documents,

21   unless otherwise indicated herein, you may, in lieu thereof, attach the documents in their

22   original state and condition and segregated and separated with an identification of the

23   Interrogatory or Interrogatories to which they are submitted as being responsive.  Produce each

24   such document in a manner that preserves its sequential relationship with other documents

25   being produced, including the file folder, and folder tabs associated with its file location, and if

26   not apparent on the folder or tabs, accompanied by identification of the persons or department

27

from whose files it was taken, and such additional source information as is necessary to enable

the parties to determine the document's original pre-production location.

2.      Requests for Production of Documents

Pursuant to Rule 34, you are directed to provide a written response to these Requests for

Production of Documents and produce and make available for inspection and copying all of the

documents requested herein in their original state and condition at the offices of Ram and

Olson LLP, 555 Montgomery Street, Suite 820, San Francisco, California, 94111, thirty (30)

days after service of this request, or at such other time and place as may be mutually agreed

upon by the parties.  Deliver each document produced in a manner that preserves its sequential

relationship with other documents being produced, including the file folder and folder tab

associated with its file location, and if not apparent on the folder or tab, accompanied by

identification of the person or department from whose files it was taken and such additional

source information as is necessary to enable the parties to determine the document's original

pre-production location.  When documents are produced pursuant to these Discovery Requests,

the documents are to be produced in a manner so that the Discovery Request to which they are

responsive can be readily identified.

These Requests for Production of Documents are continuing in nature.  In accordance

with Rule 26, you are requested to supplement your responses to these requests in the event that

new or additional information within their scope becomes known to you.

If any document is withheld under a claim of privilege, please:

a.      Identify such document with sufficient particularity as to author(s),

addressee(s), recipient(s), and subject matter and contents to allow the matter to be brought

before the court;

b.      State the nature of the privilege(s) asserted; and

c.      State in detail the factual basis for the claim of privilege.

**DEFINITIONS**

Throughout these Discovery Requests, including the definition of terms, the words used in the masculine gender include the feminine, and the words used in the singular include the plural.  Wherever the word "or" appears herein, the meaning intended is the logical inclusive "or" — that is, "and/or."  Wherever the word "including" appears, the meaning intended is "including but not limited to."

As used throughout these Discovery Requests, the following terms have the following indicated meanings:

1.      "DEFENDANT" means OLYMPUS IMAGING AMERICA INC., DEFENDANT'S attorneys, and ANY employees, agents, or PERSONS working on DEFENDANT'S behalf, and if applicable, DEFENDANT'S subsidiaries, predecessors or assignors, as well as ANY directors, officers, employees, agents, partners, principals, or PERSONS acting on behalf of DEFENDANT.

2.      "PLAINTIFF" means PLAINTIFF,  PLAINTIFF'S attorneys, and ANY employees, agents, or PERSONS working on PLAINTIFF'S behalf, and if applicable, PLAINTIFF'S subsidiaries, predecessors or assignors, as well as ANY directors, officers, employees, agents, partners, principals, or PERSONS acting on behalf of PLAINTIFF.

3.      "COMPLAINT" refers to Plaintiff's Class Action Complaint for Injunctive Relief and Restitution filed in this proceeding.

4.      "DATE" shall mean the exact day, month, and year if ascertainable or, if not, the best approximation, including ANY known relationship to other events.

5.      The term "DOCUMENT" or "WRITTEN COMMUNICATION" means ALL written or graphic matter, however produced, or reproduced, of EVERY kind and description in YOUR actual or constructive possession, custody, care or control.  This includes the complete original (or complete copy if the original is not available) and EACH non-identical copy regardless of origin or location.  "DOCUMENT" is intended to have the same meaning as in Fed. R. Civ. P. 34, including, without limitation: writings, CORRESPONDENCE, electronic

- 4 -

mail (e-mail) messages, Internet messages, intranet messages, text messages, web pages, voicemails, information on Palm™ Pilots or similar handheld digital assistants, facsimiles, books, pamphlets, periodicals, reports, blueprints, sketches, laser discs, magnetic discs, magnetic strips, microfiche, invoices, statements, minutes, purchase orders, contracts, vouchers, checks, charge slips, expense account reports, hotel charges, receipts, working papers, memoranda, messages, notes, envelopes, business records, financial statements, agreements, leases, drawings, graphs, charts, drafts, maps, surveys, plats, statistical records, cost sheets, calendars, appointment books, diaries, time sheets or logs, telephone records or logs, facsimile logs, photographs, sound tapes or recordings, films, tapes, computer printouts and ANY other data, including without limitation, data stored electronically or by other technical means for use with computers or otherwise from which information can be obtained or translated through detection devices into reasonably usable form, or ANY other tangible thing that constitutes or contains matters contained within the scope of Fed. R. Civ. P. 26(b). If a DOCUMENT has been prepared in several copies which are for ANY reason not identical, or if the original identical copies are no longer identical by reason of subsequent notation or other modification of ANY kind whatsoever, including but not limited to notations on the backs of pages thereto, EACH non-identical copy is a separate DOCUMENT. DOCUMENTS shall also include ELECTRONICALLY STORED INFORMATION ("ESI") and ANY electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); ANY "deleted" but recoverable electronic files on said media; ANY electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

6.     "IDENTIFY" when referring to a <u>document or written communication</u> means to state:

a.     The description of such DOCUMENTS or writings in sufficient detail in order to enable them to be identified by subpoena duces tecum;

b.     The title and EACH subtitle thereof;

c.     The date and number of pages thereof;

d.     A brief summary of the contents;

e.     The author, EACH addressee, and the distribution list thereof;

f.     The IDENTITY of EACH PERSON who witnessed, or was in a position to witness said communication;

g.     The date on which the document was prepared or signed;

h.     The physical location of the document and the name and address of its custodian or custodians;

i.     The IDENTITY of EACH document referenced by this document;

j.     The source of (or the IDENTITY of EACH PERSON who supplied) ANY information contained therein; and

k.     If ANY such document was, but is no longer in YOUR possession or subject to YOUR control, what disposition was made of it and the reason for its disposition.

7.     "IDENTIFY" when referring to a <u>meeting</u> means, for EACH such MEETING, to state:

a.     The date and hour when held;

b.     The address where held;

c.     The IDENTITY of EACH PERSON who represented YOU at EACH MEETING or conference;

d.     The IDENTITY of ANY other PERSON present; and

1      e.      EACH action taken, decision made, agreement reached or topic

2   discussed at the MEETING or conference.

3      8.      "IDENTIFY" when referring to <u>oral communications</u> means to state, with

4   respect thereto, ANY communication or portion thereof between ANY two or more PERSONS

5   that is not or was not recorded, including, but not limited to, telephone conversations, face-to-

6   face conversations, meetings, and conferences.  State the PERSONS involved, the date, the

7   setting, and the circumstances.

8      9.      "IDENTIFY" or "IDENTITY" when referring to a <u>person</u> means to state:

9      a.      His/her full name;

10     b.      His/her present residence address;

11     c.      His/her present residence telephone number;

12     d.      His/her present email address;

13     e.      His/her present business address;

14     f.      If his/her present residence or business address is unknown, state his/her

15   last known residence address and residence telephone number, his/her last known business

16   affiliation and business address, and ANY information YOU have that might reasonably lead to

17   the discovery of his/her present whereabouts; and

18     g.      With respect to PERSONS who are not natural PERSONS, state the last

19   known complete address, including zip code, the last known complete telephone number,

20   including the area code, of its headquarters, and its nearest or local office or agent.

21     10.      "INDIVIDUAL," "PERSON," or "PERSONS" shall mean natural PERSONS,

22   proprietorships, sole proprietorships, corporations, nonprofit corporations, municipal

23   corporations, local, state, federal or foreign governments or governmental agencies, political

24   subdivisions, general or limited partnerships, business trusts, trusts, estates, clubs, groups,

25   unincorporated associations, or other business or public organizations.

26

27

11.     "OWNERS" shall mean PERSONS who currently do, or who at any time have, owned an Olympus Stylus 1030 SW or Stylus 850 SW cameras ("AFFECTED CAMERAS").

12.     OLYMPUS IMAGING AMERICA INC. shall mean OLYMPUS IMAGING AMERICA INC., its attorneys, and ANY employees, agents, or PERSONS working on its behalf, and if applicable, its subsidiaries, predecessors or assignors, as well as ANY directors, officers, employees, agents, partners, principals, or PERSONS acting on behalf of OLYMPUS IMAGING AMERICA INC.

13.     "ALL" means "EVERY" and includes "EACH" and "ANY," and vice versa.

14.     "YOU," "YOUR," "OLYMPUS" and "YOUR COMPANY" means DEFENDANT OLYMPUS IMAGING AMERICA INC., its attorneys, employees, managers, officers, agents, consultants, advisors, representatives or PERSONS working on its behalf, and if applicable, its parent companies, subsidiaries, predecessors, and assignors, as well as ANY directors, officers, employees, managers, agents, partners, principals, or PERSONS acting on its behalf, including ALL past or present employees or managers exercising discretion in making POLICIES or decisions regarding the manufacturing, sale, distribution, or consumer claims regarding Olympus Stylus 1030 SW or Stylus 850 SW cameras ("AFFECTED CAMERAS").

15.     "POLICY" or "POLICIES" shall mean EACH rule, procedure, or directive, formal or informal, and EACH common understanding or course of conduct which was recognized as such by YOUR present or former officers, agents, employees or other PERSONS acting or purporting to act on YOUR behalf, which was in effect at ANY time during the period covered by theses interrogatories and which includes ANY change of POLICY.

16.     "CORRESPONDENCE" includes ALL letters, telegrams, notices, messages, or other WRITTEN COMMUNICATIONS or memoranda, including electronic communications, or other records of conversations, meetings, conferences or other oral communications.

17.     "RELATING TO" or "REFERRING TO" (including other verb tenses of those terms) means describing, evidencing, constituting, reflecting, showing, comprising, considering, concerning, discussing, regarding, setting forth, studying, analyzing, commenting upon, recommending, alluding to, or mentioning, in whole or in part.

18.     "STUDIES" includes ALL reports, analyses, memoranda, statistical compilations, reviews, and other types of written or printed submissions of information.

19.     "MEETING" shall mean ANY encounter between two or more PERSONS during which a communication of ANY kind occurred and shall include, but not be limited to, formal gatherings, conversations, communication by electronic media, and telephone calls.

20.     "NATIVE FILE FORMAT" shall mean that the information or data requested should be produced in electronic form in the application in which it was created and used in the regular course of business.  The data should be produced on a CD-ROM.  Data files should not be zipped, encrypted, or otherwise restricted or proprietarily protected for specific use.  If the NATIVE FILE FORMAT is derived from software not accessible with Microsoft Office applications or other common applications, the parties shall meet and confer regarding reliable methods of converting the data into such an application for production.

21.     "ELECTRONICALLY STORED INFORMATION" ("ESI") shall include ANY information as defined by the Federal Rules of Civil Procedure and the case law developing those rules.  PLAINTIFFS request that ESI be processed and produced in a manner that preserves ALL metadata and that the parties confer regarding the production of metadata prior to the gathering and processing of ESI.

22.     "AFFECTED CAMERA" means an Olympus camera designed, manufactured, distributed and sold as Olympus Stylus 1030 SW or Olympus Stylus 850 SW.

### **INTERROGATORIES**

**INTERROGATORY NO. 1:**  State the name, address and job title of EACH PERSON who participated in responding to these discovery requests on behalf of OLYMPUS and state

1  what efforts they made to fully respond to these discovery requests, including efforts

2  REFERRING OR RELATING TO retention of ESI.

3       **ANSWER:**

4

5

6

7       **INTERROGATORY NO. 2:**  Please IDENTIFY the PERSON(S) who, in whole or in

8  part, manufactured the battery card covers and/or battery card cover latches of the AFFECTED

9  CAMERAS.

10       **ANSWER:**

11

12

13

14       **INTERROGATORY NO. 3:**  Please IDENTIFY the PERSON(S) from whom

15  OLYMPUS purchased the AFFECTED CAMERAS' battery card covers and/or battery card

16  cover latches.

17       **ANSWER:**

18

19

20

21       **INTERROGATORY NO. 4:**  Please IDENTIFY ANY and ALL current or former

22  OLYMPUS employees with knowledge regarding EACH of the following areas when

23  REFERRING or RELATING TO the AFFECTED CAMERAS:

24       a.       Research and development;

25       b.       Selection of component parts from third-party sources;

26       c.       Marketing and advertisement;

27

1        d.      Sales and distribution;

2        e.      Manufacturing;

3        f.      Quality control;

4        g.      Regulatory compliance;

5        h.      Complaints;

6        i.      Warranty terms and provisions; and

7        j.      Warranty claims and payments.

8        With respect to EACH of the foregoing, if ANY employee is no longer employed by

9   YOU, state the last known address and telephone number of that INDIVIDUAL.

10       **ANSWER:**

11

12

13

14       **INTERROGATORY NO. 5:**   Please list and describe ALL tests and/or analyses of

15   any kind performed on the AFFECTED CAMERAS, whether by OLYMPUS or any third

16   party, including testing and/or analyses RELATING TO battery card cover and/or battery card

17   cover latch design, manufacture, materials selection, compatibility of the battery card cover

18   and/or battery card cover latch with the AFFECTED CAMERA, durability, quality control, life

19   expectancy, failure modes, propensity to fail, and/or the condition of the battery card cover

20   and/or battery card cover latch.

21       **ANSWER:**

22

23

24

25       **INTERROGATORY NO. 6:**  Please IDENTIFY the total number of AFFECTED

26   CAMERAS sold in the State of California by model number and year.

27

1       **ANSWER:**

2

3

4

5       **INTERROGATORY NO. 7:**  Please IDENTIFY by name and address ALL

6   OLYMPUS authorized sellers of the AFFECTED CAMERAS in the State of California.

7

8       **ANSWER:**

9

10

11

12      **INTERROGATORY NO. 8:**  Please IDENTIFY by name and address ALL

13  OLYMPUS authorized technicians and/or service centers for the AFFECTED CAMERAS in

14  the State of California.

15

16      **ANSWER:**

17

18

19

20      **INTERROGATORY NO. 9:**  State whether ANY information or DOCUMENTS

21  responsive to these Interrogatories and Plaintiffs' Requests for Production of DOCUMENTS

22  have been lost or destroyed and, if so, IDENTIFY those DOCUMENTS or information.

23

24      **ANSWER:**

25

26

27

**INTERROGATORY NO. 10:**  Please IDENTIFY EACH and EVERY lawsuit RELATING to the AFFECTED CAMERAS.

**ANSWER:**

**INTERROGATORY NO. 11:**  Please IDENTIFY EACH AND EVERY complaint to ANY governmental agency or other third party arising from or RELATING TO the performance of ANY AFFECTED CAMERAS.

**ANSWER:**

**INTERROGATORY NO. 12:**  State the total number, date(s) and amount of any payment or credit requests YOU have received from California residents RELATING TO the AFFECTED CAMERAS, including but not limited to payments or credits requested by YOUR authorized sellers, service centers, and OWNERS, as well as the disposition of such requests.

**ANSWER:**

**INTERROGATORY NO. 13:**  IDENTIFY EACH and EVERY meeting YOU had whose subject matter in any manner RELATED TO the AFFECTED CAMERAS.

1      **ANSWER:**

2

3

4

5      **INTERROGATORY NO. 14:**  IDENTIFY by model and manufacturer EACH and

6      EVERY type of battery card cover and battery card cover latch used for EACH and EVERY

7      Olympus Stylus SW camera.

8

9      **ANSWER:**

10

11

12

13     **INTERROGATORY NO. 15:**  IDENTIFY the total number of warranty claims

14     received by YOU for the AFFECTED CAMERAS sold in the State of California.

15

16     **ANSWER:**

17

18

19

20     **INTERROGATORY NO. 16:**  IDENTIFY EACH and EVERY PERSON who has

21     submitted a warranty claim to YOU RELATED TO an AFFECTED CAMERA sold in the

22     State of California.

23

24     **ANSWER:**

25

26

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**INTERROGATORY NO. 17:**  IDENTIFY EACH and EVERY PERSON who has made a complaint or any other type of claim to YOU RELATED TO an AFFECTED CAMERA sold in the State of California.  Please also IDENTIFY when the complaint or claim was made and the ultimate disposition of the complaint or claim, including but not limited to whether the AFFECTED CAMERA was replaced, whether the PERSON received a refund, or whether any other remedy was provided to the PERSON.

**ANSWER:**

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**  Produce OLYMPUS' DOCUMENT retention POLICIES.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**  Produce all WRITTEN COMMUNICATIONS between OLYMPUS and the manufacturer(s) of the battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**  Produce ALL DOCUMENTS REFERRING or RELATING TO the sourcing, selection, design, manufacture, and testing of the AFFECTED CAMERAS, including the battery card covers and/or battery card cover

1  latches of the AFFECTED CAMERAS.  This request includes but is not limited to, ESI and e-

2  mails, mechanical drawings, CAD files, plans and schematics, blueprints, durability testing,

3  quality control test results, life expectancy test results, failure modes, agreements with ANY

4  testing facility and ANY test conducted by YOU or on YOUR behalf REFERRING or

5  RELATING TO ANY modification of the AFFECTED CAMERAS, or the battery card covers

6  and/or battery card cover latches of the AFFECTED CAMERAS, including the complete file of

7  all PERSONS involved.

8  **RESPONSE:**

9

10

11

12  **REQUEST FOR PRODUCTION NO. 4:**  Produce ALL DOCUMENTS that

13  IDENTIFY OWNERS of the AFFECTED CAMERAS in the State of California.

14  **RESPONSE:**

15

16

17

18  **REQUEST FOR PRODUCTION NO. 5:**  Produce ALL DOCUMENTS

19  REFERRING or RELATING TO communications between OLYMPUS and OWNERS who

20  reside in California regarding complaints, claims, reported failures, and warranty claims

21  involving the AFFECTED CAMERAS, including but not limited to WRITTEN

22  COMMUNICATIONS and customer service or warranty databases.

23  **RESPONSE:**

24

25

26

27

**REQUEST FOR PRODUCTION NO. 6:**  Produce ALL service bulletins, warranties, warranty extensions, recalls, or other similar communications RELATING TO the AFFECTED CAMERAS, or the battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**  Produce ALL DOCUMENTS REFERRING or RELATING TO ANY notice(s), letter(s), campaign(s), warranty extension(s), BULLETIN(S) and recalls applying to the AFFECTED CAMERAS, or the battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**  Produce ALL DOCUMENTS REFERRING or RELATING TO the service or repair of the AFFECTED CAMERAS, or the battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**  Produce all DOCUMENTS RELATING TO warranties applying to the AFFECTED CAMERAS.

1    **RESPONSE:**

2

3

4

5    **REQUEST FOR PRODUCTION NO. 10:**  Produce ALL DOCUMENTS

6    REFERRING or RELATING TO analyses or investigations regarding claims, complaints,

7    and/or warranty claims REFERRING or RELATING TO the AFFECTED CAMERAS, or the

8    battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.

9    **RESPONSE:**

10

11

12

13   **REQUEST FOR PRODUCTION NO. 11:**  Produce ALL DOCUMENTS

14   REFERRING or RELATING TO YOUR POLICIES and procedures for handling complaints

15   RELATING TO the AFFECTED CAMERAS.

16   **RESPONSE:**

17

18

19

20   **REQUEST FOR PRODUCTION NO. 12:**  Produce ALL DOCUMENTS

21   REFERRING or RELATING in ANY way to ANY OWNERS' communications with

22   OLYMPUS regarding the AFFECTED CAMERAS, including but not limited to customer

23   service records, reports and databases, and ANY POLICIES, procedures, instructions, or

24   manuals for logging, monitoring, or tracking OWNER complaints RELATING TO the

25   AFFECTED CAMERAS.

26

27

1    **RESPONSE:**

2

3

4

5    **REQUEST FOR PRODUCTION NO. 13:**  Produce ALL DOCUMENTS

6    REFERRING or RELATING TO ANY complaints involving the AFFECTED CAMERAS

7    made to ANY government entity.

8    **RESPONSE:**

9

10

11

12    **REQUEST FOR PRODUCTION NO. 14:**  Produce ALL DOCUMENTS

13    REFERRING or RELATING TO ANY requests by California consumers for payment or credit

14    for the repair or replacement of the AFFECTED CAMERAS, or the battery card covers and/or

15    battery card cover latches of the AFFECTED CAMERAS.

16

17    **RESPONSE:**

18

19

20

21    **REQUEST FOR PRODUCTION NO. 15:**  Produce ALL DOCUMENTS

22    REFERRING or RELATING in ANY way to ANY legal claim or settlement of a potential

23    legal claim against OLYMPUS REFERRING or RELATING TO the AFFECTED CAMERAS

24    subject to this lawsuit.

25    **RESPONSE:**

26

27

1

2

3       **REQUEST FOR PRODUCTION NO. 16:**  Produce ALL DOCUMENTS, including

4   WRITTEN CORRESPONDENCE REFERRING or RELATING TO the battery card covers

5   and/or battery card cover latches of the AFFECTED CAMERAS.

6       **RESPONSE:**

7

8

9

10      **REQUEST FOR PRODUCTION NO. 17:**  Produce ALL DOCUMENTS

11  REFERRING or RELATING in ANY way to the failure and replacement rate of the

12  AFFECTED CAMERAS.

13      **RESPONSE:**

14

15

16

17      **REQUEST FOR PRODUCTION NO. 18:**  Produce ALL DOCUMENTS

18  REFERRING or RELATING TO the expected useful life of the AFFECTED CAMERAS.

19      **RESPONSE:**

20

21

22

23      **REQUEST FOR PRODUCTION NO. 19:**  Produce ALL DOCUMENTS reflecting

24  projected failure rates of the AFFECTED CAMERAS.

25      **RESPONSE:**

26

27

1

2

3       **REQUEST FOR PRODUCTION NO. 20:**  Produce ALL DOCUMENTS reflecting

4   the results of ANY water exposure testing, impact or shock testing, bench testing, fatigue

5   testing, or durability testing RELATING TO the AFFECTED CAMERAS or the battery card

6   covers and/or battery card cover latches of the AFFECTED CAMERAS.

7       **RESPONSE:**

8

9

10

11      **REQUEST FOR PRODUCTION NO. 21:**  Produce ALL DOCUMENTS

12  REFERRING or RELATING TO the marketing, advertising, promotion, or sale of the

13  AFFECTED CAMERAS, including but not limited to internal memoranda, brochures,

14  advertisements, website postings or other collateral material.

15      **RESPONSE:**

16

17

18

19      **REQUEST FOR PRODUCTION NO. 22:**  Produce ALL DOCUMENTS

20  REFERRING or RELATING TO the suppliers of the AFFECTED CAMERAS, including

21  ANY component or material used to manufacture the AFFECTED CAMERAS, including the

22  battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.  This

23  request includes but is not limited to the selection of ANY supplier(s) and ANY agreements

24  between OLYMPUS and ANY such supplier(s).

25      **RESPONSE:**

26

27

1

2

3          **REQUEST FOR PRODUCTION NO. 23:**  Produce ALL DOCUMENTS

4   REFERRING or RELATING TO ANY quality assurance testing conducted on the AFFECTED

5   CAMERAS or the battery card covers and/or battery card cover latches of the AFFECTED

6   CAMERAS, including testing conducted before, during, and after production.

7          **RESPONSE:**

8

9

10

11         **REQUEST FOR PRODUCTION NO. 24:**  Produce ALL DOCUMENTS that YOU

12  designate in YOUR Initial Disclosures in connection with Civil Rule 26(a)(1).

13

14         **RESPONSE:**

15

16

17

18         **REQUEST FOR PRODUCTION NO. 25:**  Produce ANY and ALL owner's manuals

19  for the AFFECTED CAMERAS.

20         **RESPONSE:**

21

22

23

24         **REQUEST FOR PRODUCTION NO. 26:**  Produce ALL DOCUMENTS, including

25  but not limited to scripts provided to, or used by, customer service representatives working for

26  (or on behalf of) YOU, that refer or relate to the AFFECTED CAMERAS.

27

1

**RESPONSE:**

2

3

4

5

**REQUEST FOR PRODUCTION NO. 27:**  Produce ALL DOCUMENTS reflecting

6

or referring to ANY communication between OLYMPUS and any third party REFERRING or

7

RELATING TO the AFFECTED CAMERAS or the battery card covers and/or battery card

8

cover latches of the AFFECTED CAMERAS, including but not limited to communication with

9

ANY dealer, retailer, retail outlet, installer, and/or repairer of ANY AFFECTED CAMERAS.

10

11

**RESPONSE:**

12

13

14

15

**REQUEST FOR PRODUCTION NO. 28:**  Produce ALL STUDIES, analyses or

16

other communications circulated between or among OLYMPUS and ANY third parties

17

regarding the AFFECTED CAMERAS or the battery card covers and/or battery card cover

18

latches of the AFFECTED CAMERAS.

19

**RESPONSE:**

20

21

22

23

**REQUEST FOR PRODUCTION NO. 29:**  Produce ALL DOCUMENTS constituting

24

or explaining YOUR refund, repair, and/or replacement practices or POLICIES applicable to

25

the AFFECTED CAMERAS.

26

**RESPONSE:**

27

- 23 -

1

2

3

4       **REQUEST FOR PRODUCTION NO. 30:**  Produce DOCUMENTS IDENTIFYING

5   ALL corporations, entities, affiliates, partners, or others who have participated in the design,

6   development, engineering, manufacture or assembly of the AFFECTED CAMERAS or the

7   battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.

8       **RESPONSE:**

9

10

11

12      **REQUEST FOR PRODUCTION NO. 31:**  Produce DOCUMENTS IDENTIFYING

13  ALL corporations, entities, affiliates, partners, or others who have participated in ANY testing

14  of the AFFECTED CAMERAS or the battery card covers and/or battery card cover latches of

15  the AFFECTED CAMERAS.

16      **RESPONSE:**

17

18

19

20      **REQUEST FOR PRODUCTION NO. 32:**  Produce ALL DOCUMENTS and

21  communications regarding ANY changes in the design of the AFFECTED CAMERAS or the

22  battery card covers and/or battery card cover latches of the AFFECTED CAMERAS.

23      **RESPONSE:**

24

25

26

27

1   **REQUEST FOR PRODUCTION NO. 33:**  Produce DOCUMENTS sufficient to

2   reflect OLYMPUS' corporate organizational structure, including but not limited to,

3   organizational charts since 2006.

4   **RESPONSE:**

5

6

7

8   **REQUEST FOR PRODUCTION NO. 34:**  Produce DOCUMENTS sufficient to

9   IDENTIFY the personnel responsible for the development, testing, and/or manufacture of the

10  AFFECTED CAMERAS, including but not limited to, organizational charts.

11  **RESPONSE:**

12

13

14

15  **REQUEST FOR PRODUCTION NO. 35:**  Produce ALL DOCUMENTS concerning,

16  REFERRING or RELATING TO PLAINTIFF, including but not limited to ANY

17  communications with PLAINTIFF.

18  **RESPONSE:**

19

20

21

22  **REQUEST FOR PRODUCTION NO. 36:**  Produce ALL DOCUMENTS identified in

23  any of YOUR responses to PLAINTIFF's First Set of Interrogatories.

24  **RESPONSE:**

25

26

27

1

2

3

Dated:  December 7, 2010.        TERRELL MARSHALL & DAUDT PLLC

4

5

6

7

8

9

By:  /s/ Beth E. Terrell, CSB #178181
     Beth E. Terrell, CSB #178181
     Email: bterrell@tmdlegal.com
     Marc C. Cote, *Admitted Pro Hac Vice*
     Email:  mcote@tmdlegal.com
     3600 Fremont Avenue North
     Seattle, Washington  98103
     Telephone:  206-816-6603
     Facsimile:  206-350-3528

10

11

12

13

14

15

Michael F. Ram, CSB #104805
     Email:  mram@ramolson.com
     Karl Olson, CSB #104760
     Email:  kolson@ramolson.com
     RAM & OLSON LLP
     555 Montgomery Street, Suite 820
     San Francisco, California  94111
     Telephone:  415-433-4949
     Facsimile:  415-433-7311

16

*Attorneys for Plaintiff and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

1

CERTIFICATION

2

    I am the attorney for Defendant Olympus Imaging America, Inc.  I have read the above

3

and foregoing responses to Plaintiff's First Interrogatories and Requests for Production

4

Propounded to Defendant Olympus Imaging America, Inc., and I hereby certify that they

5

comply with CR 26(g).

6

7

    DATED this _____ day of _____, 2011.

8

                                      DLA PIPER LLP

9

10

                                      By:_____

11

                                      *Attorneys for Defendant*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**VERIFICATION**

STATE OF _____ )
                                                              ) ss.
COUNTY OF _____ )

_____, being first duly sworn on oath, deposes and says:

I am _____ for the above-named Defendant.  I have read the within and foregoing answers and responses to Plaintiff's First Interrogatories and Requests for Production Propounded to Defendant Olympus Imaging America, Inc., know the contents thereof, and believe the same to be true.

_____

SUBSCRIBED AND SWORN to before me this _____ day of _____, 2011.

_____

[PRINT NAME]_____
NOTARY PUBLIC for the State of _____
Residing at _____
My Commission Expires: _____

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on December 7, 2010, I served the foregoing document entitled Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Defendant by electronic mail to the following:

Christopher M. Young (Bar No. 163319)
christopher.young@dlapiper.com
Ryan T. Hansen (Bar No. 234329)
ryan.hansen@dlapiper.com
Amanda C. Fitzsimmons (Bar No. 258888)
amanda.fitzsimmons@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California  92101-4297
Telephone:  619.699.2700
Facsimile:  619.699.2701

*Attorneys for Defendant*

DATED this 7th day of December, 2010.

TERRELL MARSHALL & DAUDT PLLC


By:   /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA # 26759
Email:  bterrell@tmdlegal.com
3600 Fremont Avenue North
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff*

# EXHIBIT B



**DLA Piper LLP (US)**
401 B Street, Suite 1700
San Diego, California  92101-4297
www.dlapiper.com

Christopher M. Young
christopher.young@dlapiper.com
**T**  619.699.4748
**F**  619.764.6748

December 9, 2010
*VIA E-MAIL*

Beth E. Terrell, Esq.
Terrell Marshall & Daudt PLLC
3600 Fremont Avenue North
Seattle, WA 98103

**Re:**  *Mlejnecky v. Olympus Imaging America Inc.*:  **Stay of Discovery**

Dear Ms. Terrell,

We are in receipt of the discovery that your office recently served on Olympus Imaging America Inc. ("Olympus") in the above-referenced case.  As was noted in the cover letter you provided with the discovery, it is substantially similar to the set of draft discovery requests that you had provided prior to our telephonic "meet and confer" conference on Monday, December 6.

As we discussed on Monday, we believe that the discovery you have propounded is premature in light of Olympus's pending dispositive motion to dismiss.  Olympus has challenged Ms. Mlejnecky's standing to bring a lawsuit against Olympus at all; Ms. Mlejnecky's standing to challenge most of the products, advertising, and purported defects highlighted in her First Amended Complaint; and whether Ms. Mlejnecky can plead facts to state a claim against Olympus.  As noted in Olympus's motion to dismiss, courts in similar circumstances have dismissed such claims with prejudice.

Under the circumstances, we do not believe it makes sense for either party to engage in expensive early discovery or initial disclosures at this time, as this case may not move forward at all.  The pleadings are in far from final form – your client just recently amended the complaint, and Olympus has moved to dismiss that complaint as was done in response to the original complaint.  Courts have routinely recognized that stays of discovery are appropriate under such circumstances.  *See e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (recognizing that the "purpose of [Rule 12(b)(6)] is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.").  As the *Rutman* court explained, "It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." *Id.*

Accordingly, I request that you stipulate to a stay of discovery and initial disclosures, just until an answer is filed.  A relatively brief stay of this nature would save both parties a great deal of time and expense, and promote judicial efficiency.  Moreover, it seems that plaintiff would not be prejudiced in any way by a brief stay – the case is only just underway, and no trial or pretrial dates have been set.  Absent a



Beth E. Terrell, Esq.
December 9, 2010
Page Two

stipulation, Olympus will file a motion to stay discovery with Judge Mendez, but I would obviously prefer not to have to go to the expense of that step.

As always, I'd also be glad to answer any questions or discuss these issues further at your convenience. Please let me know your thoughts when you can.

Very truly yours,

**DLA Piper LLP (US)**

Christopher M. Young
Partner

cc:    Michael F. Ram, Esq.

WEST\222838612.1

**T M D**

TERRELL
MARSHALL
& DAUDT
PLLC

ATTORNEYS & COUNSELORS

3600 FREMONT AVENUE N.
SEATTLE, WASHINGTON  98103
T: 206.816.6603
F: 206.350.3528

WWW.TMDLEGAL.COM

BETH E. TERRELL
bterrell@tmdlegal.com

File No: 1154-001.A

December 13, 2010

*Via Email*

Christopher M. Young
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California  92101-4297
Christopher.Young@dlapiper.com

Re:     *Mlejnecky v. Olympus Imaging America Inc.,*
        E.D. CA Cause No. 2:10−CV−02630−JAM−KJN
        Discovery

Dear Chris:

We received your letter dated December 9, 2010.  We were surprised to see your demand for a complete stay of discovery.  As you know, during our FRCP 26(f) conference we proposed that the parties conduct limited discovery at this stage and invited you to identify any areas in which your client would be willing to provide information.  From your letter, it appears that Olympus is taking a hard-line approach in its demand for a complete stay of discovery.

Such a demand is not supported by case law.  The case you cited in support of a stay, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987), is factually and procedurally distinguishable.  In *Rutman*, the appeals court was not considering a district court ruling on a motion to stay discovery.  To the contrary, the plaintiff in *Rutman* was essentially seeking a stay of the motion to dismiss *in order to* conduct discovery.  *Id.* at 738.  The *Rutman* court's decision not to permit additional time for discovery prior to ruling on the pending motion to dismiss was based on the "prohibitive" cost of discovery *in antitrust actions*.  *Id.*  You have pointed to no case in which a court entered a stay of discovery merely because a motion to dismiss was filed.  Such an action would mean effectively ignoring the Federal Rules of Civil Procedure regarding discovery.

Christopher M. Young
December 10, 2010
Page 2

    While we believe that discovery should proceed without interruption, we are nonetheless willing to consider an agreement to limit discovery to targeted areas at this stage.  To that end, we have identified a limited number of categories of information and documents that we believe should be produced now:

| Information and Document Category | Discovery Request |
| --- | --- |
| Tests and Analyses Performed on Olympus Stylus SW Cameras | Interrogatory No. 5, Requests for Production 20, 28 |
| Complaints, Claims, Reported Failures, Warranty Claims, and Requests for Payment or Credit | Requests for Production Nos. 5, 14 |
| Notices, Letters, Warranty Extensions, and Bulletins | Request for Production Nos. 6, 7 |
| Investigations and Analysis of Complaints and Claims | Request for Production No. 10 |
| Failure and Replacement Rate | Request for Production No. 17 |
| Marketing, Advertising, Promotion, or Sale of Olympus Stylus SW cameras | Request for Production No. 21 |

    The above discovery requests are targeted at issues that are pertinent to this stage of the proceedings.  They concern issues relevant to Olympus's recently filed motion to dismiss, including the common defects inherent in all Stylus SW cameras, Olympus's notice of the defects, and Olympus's knowledge that it was making material misrepresentations and omissions.

    Furthermore, in the spirit of cooperation, we are willing to limit the above requests even further at this stage by seeking only information related to 1) testing of the alleged waterproof and shockproof qualities of the Stylus SW cameras; 2) complaints, claims, reported failures, and warranty claims limited only to the waterproof and shockproof qualities of the Stylus SW cameras; and 3) failure of Stylus SW cameras related only to the waterproof and shockproof qualities of the Stylus SW cameras.

    Please let me know as soon as possible if your clients will agree to respond to the limited discovery outlined above.  If you have any questions or concerns, please do not hesitate to let me know.

Christopher M. Young
December 10, 2010
Page 3

Very truly yours,

TERRELL MARSHALL & DAUDT PLLC

Beth E. Terrell

cc:    Michael Ram
       Karl Olson



**DLA Piper LLP (US)**
401 B Street, Suite 1700
San Diego, California  92101-4297
www.dlapiper.com

Christopher M. Young
christopher.young@dlapiper.com
**T**  619.699.4748
**F**  619.764.6748

December 13, 2010
*Via E-Mail*

Beth E. Terrell, Esq.
Terrell Marshall & Daudt PLLC
3600 Fremont Avenue North
Seattle, WA 98103

**Re:**     ***Mlejnecky v. Olympus Imaging America Inc.*:  Stay of Discovery**

Dear Ms. Terrell,

We are in receipt of your letter of today's date regarding the request by Olympus Imaging America Inc. ("Olympus") in the above-referenced case to stipulate to a stay of discovery and initial disclosures until Olympus's pending motion to dismiss is heard and the pleadings are settled.

As discussed during our Rule 26(f) conference, Olympus strongly believes that Plaintiff Stefanie Mlejnecky's Complaint should be dismissed with prejudice.  Olympus's pending motion to dismiss requests the Court dismiss the Complaint with prejudice, in its entirety, due to lack of standing and failure to plead facts to state a claim against Olympus.  As addressed in the motion, other courts have dismissed similar pleadings with prejudice, including the recent decision in *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, Nos. 08-CV-2276-IEG (WVG), 09-CV-0620-IEG (WVG), 09-CV-0736-IEG (WVG), 09-CV-2703-IEG (WVG), 2010 WL 4892114 (S.D. Cal. Nov. 30, 2010).  Even if the above-referenced deficiencies were not considered, Olympus believes that Plaintiff lacks standing to assert claims regarding products she did not purchase, purported defects she did not experience, and advertisements she does not even claim to have seen or relied upon.  Notably, the limited discovery suggested in your letter seeks information regarding such matters, including a host of information on a camera Plaintiff did not purchase and purported waterproofing defects Plaintiff does not contend to have experienced.

Accordingly, I maintain that it simply does not make sense to engage in expensive discovery unless and until Plaintiff can state a claim against Olympus.  We respectfully disagree with your attempt to distinguish *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987), on this point.  Notably, the *Rutman* court did <u>not</u> allow the plaintiff in that case to conduct discovery prior to stating a valid claim for relief, and the court's reasons for that ruling are equally applicable here.  As the *Rutman* court explained, "It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery."  *Id.*; *see also*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'").



Beth E. Terrell, Esq.
December 13, 2010
Page Two


We understand from your letter that you will not stipulate to a stay of discovery and, thus, we intend to bring this matter before the Court on a motion.  Please let me know as soon as possible if I have interpreted your position incorrectly.  We also note that, in light of Olympus's objections to initial disclosures during the Rule 26(f) conference and in the Rule 26(f) report, no initial disclosures will be made until this matter is heard by the Court.  *See* Fed. R. Civ. P. 26(a)(1)(C).

As always, I would be happy to answer any questions or discuss these issues further at your convenience.


Very truly yours,

**DLA Piper LLP (US)**


Christopher M. Young
Partner



cc:    Michael F. Ram, Esq.


WEST\222849468.1